503 S.E.2d 17

**Lonnie Alan BREWER and Vivian Brewer, Plaintiffs Below/Appellants,**

v.

**HOSPITAL MANAGEMENT ASSOCIATES, INC., a Kentucky Corporation qualified to do business and doing business in the State of West Virginia, Health Management Associates of West Virginia, Inc., a West Virginia Corporation, Russell A. Salton, III, and Robert L. Salton as Co–Executors of the Estate of Russell A. Salton, M.D., deceased, Alice K. Tchou, Administratrix of the Estate of Robert J. Tchou, M.D., deceased, and Williamson Memorial Hospital, a Partnership, Defendants Below/Appellees.**

No. 24645.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided May 21, 1998.

Dissenting Opinion of Justice Workman July 17, 1998.

that HMA was not contractually bound to assume the liability asserted by the Brewers. In this appeal the Brewers argue that the contract in question is not ambiguous and evidences the assumption of liability by HMA. Alternatively, the Brewers argue that the contract is ambiguous and therefore presented disputed material issues of fact that preclude summary judgment. We affirm the circuit court.

## I.

### FACTUAL BACKGROUND

Vivian Brewer gave birth to Lonnie Alan Brewer at the Williamson Memorial Hospital on March 31, 1975. The Brewers allege that during neonatal care at the hospital Lonnie suffered severe brain damage that left him unable to walk or talk. In 1978 HMA purchased the hospital from its owners, Dr. Russell A Salton (deceased) and Dr. Robert Tchou (deceased).[2] As part of the terms of the Agreement of Sale, HMA contracted to assume "all accounts payable and other liabilities of Hospital, represented to be in the approximate amount of One Hundred Thousand Dollars[.]" The specific language of the contract states:

6. *PAYMENT OF PURCHASE PRICE:*

. . .

*... and as assumption by Purchaser of all accounts payable and other liabilities of Hospital, represented to be in the approximate amount of One Hundred Thousand Dollars, and an assumption of the payment of what is generally referred to as the "Salton/Tchou" notes at The National Bank of Commerce, represented by the male Purchaser to be in the approximate amount of One Hundred Thousand Dollars, plus an additional payment by Purchaser unto Sellers of cash ...*

Teresa C. Postle, Charleston, for Appellants.

William L. Mundy, Perry W. Oxley, Amy C. Crossan, Mundy & Adkins, Huntington, for Appellees Hospital Management Associates, Inc. and Health Management Associates of West Virginia, Inc.

PER CURIAM.[1]

This is an appeal by Lonnie Alan Brewer and Vivian Brewer, appellants/plaintiffs below (the "Brewers"), from an order by the Circuit Court of Mingo County granting summary judgment to Hospital Management Associates, Inc. and Health Management Associates of West Virginia, Inc., appellees/defendants below (collectively referred to as "HMA"). The circuit court's order found

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. The estates of Dr. Salton and Dr. Tchou were named as defendants in this action. The Brewers' reply brief indicated that a settlement was reached with the estates of Dr. Salton and Dr. Tchou. As part of the settlement, the Brewers were assigned the estates' rights to any contractual indemnification by HMA.

In 1994, the Brewers filed the instant action against HMA, and the estates of Dr. Salton and Dr. Tchou, alleging medical malpractice in the treatment and care of Lonnie in 1975.[3] HMA moved for summary judgment on December 2, 1996. By order entered March 19, 1997, the circuit court granted summary judgment to HMA. In granting summary judgment the circuit court specifically found that the agreement of sale did not contemplate HMA being liable for any alleged acts of negligence or any other tort liability committed by Dr. Salton or Dr. Tchou prior to the sale of the hospital. From that ruling, the Brewers timely prosecuted this appeal.

## II.

## STANDARD OF REVIEW

■ The standard of review of a circuit court's entry of summary judgment is de novo. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We indicated in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963) that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See* Syl. pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995) Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

## III.

## DISCUSSION

■ The first argument raised by the Brewers is that the contract for the sale of the hospital to HMA is not ambiguous and that it provides for HMA to assume all liabilities of the hospital.[4] HMA counters that the contract specifically designated every liability it would incur from the purchase. Such designation did not include the liability asserted by the Brewers. This Court held in syllabus point 1 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962) that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."

■ The pertinent language of the contract in the instant case provides that HMA contracted to assume "all accounts payable and other liabilities of Hospital, represented to be in the approximate amount of One Hundred Thousand Dollars[.]" The Brewers contend that this provision, on its face, obligates HMA to assume "all liabilities" of the hospital. The circuit court's order found that the contract did not provide for HMA to assume the liability alleged by the Brewers. To accept the Brewers' contention requires ignoring the specific assumed liabilities contained in the provision. The specific clause at issue in this case lists two liabilities: accounts payable and liabilities represented to be in the amount of about one hundred thousand dollars. The Brewers do not contend that the liabilities represented to be in the amount of about one hundred thousand dollars includes their claim (the ad damnum clause in the complaint demands twenty-three million dollars). Application of the terms of the liability clause appears to pre-

3. The record is unclear as to whether the Brewers invoked the discovery rule or the statutory tolling of the statute of limitations for minors in order to extend filing this action beyond the two year statute of limitations.

4. HMA raised an argument in its brief that the Brewers lack standing to bring this claim. The Brewers indicate in their reply brief that the issue of standing was not raised at the circuit court level. This Court indicated in *Loar v. Massey*, 164 W.Va. 155, 159–60, 261 S.E.2d 83, 86–87 (1979) that " 'it has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal.' " Quoting *Konchesky v. S.J. Groves & Sons Co., Inc.*, 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964). The "general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Whitlow v. Board of Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (Citations omitted). The standing issue is not properly before this Court.

clude assumption of the liability asserted by the Brewers. The remaining parts of paragraph 6 set forth, with specificity, the indebtedness assumed by HMA.[5]

■ As an alternative argument, the Brewers contend that the contract phrase referring to the assumption of liabilities represented to be in the amount of about one hundred thousand dollars is ambiguous. Further, the Brewers contend that resolution of the ambiguity presents a jury question. " 'It is the province of the Court, and not of the jury, to interpret a written contract.' Syl. Pt. 1, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937)." Syl. Pt. 1, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984). Moreover, this Court stated in *Williams v. Precision Coil, Inc.,* 194 W.Va. at 62, n. 18, 459 S.E.2d at 339 n. 18, that:

While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract under our cases is a question of fact. Subject to one exception, the determination of factual issues is solely within the province of the jury. Of course, that exception is Rule 56 dealing with summary judgments.

The Brewers contend that "[s]ignatories to the contract, or others, may testify that the successor was to assume *all* liabilities of the hospital." Assuming for a moment that an ambiguity exists in the pertinent contract language, the Brewers have other difficulties which are presented by their argument. The Brewers failed to submit any affidavits, depositions or answers to interrogatories supporting their argument.[6] The circuit court was

5.   6. *PAYMENT OF PURCHASE PRICE: Representing the down payment,* Purchaser shall, upon the date of closing, assume the payment of the negotiable promissory note made by the male Seller (and his wife, Cornelia Salton) and payable to the order of Martha Brown Conley, which note is dated April 1, 1971, in the principal amount of Four Hundred Thousand Dollars, with interest from date at six percent per annum, as computed in said note, the present balance of said note being represented by said male Seller to Purchaser as being Two Hundred Thousand Dollars, more or less, *and as assumption by Purchaser of all accounts payable and other liabilities of Hospital, represented to be in the approximate amount of One Hundred Thousand Dollars, and an assumption of the payment of what is generally referred to as the "Salton/Tchou" notes at The National Bank of Commerce, represented by the male Purchaser to be in the approximate amount of One Hundred Thousand Dollars, plus an additional payment by Purchaser unto Sellers of cash,* in an amount of no less than Fifty Thousand Dollars, and no more than One Hundred Thousand Dollars, and, provided further, that in no event shall such down payment from Purchaser to Sellers exceed thirty per centum (30%) of the gross sales price, angnshall be no less than twenty per centum (20%) of said gross sales prices. The balance of said purchase price shall be represented by a negotiable promissory note, made by Purchaser and payable over a period of twenty year, and on an amortized basis of twenty years with twenty equal annual installments the first payment being due and payable one year from the date of closing, and subsequent payments annually thereafter until all of the principal of said note, with interest as hereinafter provided, is paid, and provided,

however, that following the tenth annual payment, and no sooner, the Purchaser shall have the right to anticipate the payment of the balance due under said note, and the Sellers shall have a right to request payment of the balance of said note, provided only that no more than thirty percent of the gross sales price principal shall be payable in any one year. The payment of the note shall be secured by a first lien deed of trust on the real property hereinabove described, which deed of trust shall be made by Purchaser herein as the grantor therein unto trustees to be chosen by Sellers to secure the Sellers herein as beneficiaries therein. The note for such balance shall have a floating rate of interest of one per centum (1%) over the "prime interest" as established by The First National City Bank of New York as in existence on the date of the payment dates, provided that the interest on such note shall in no event be less than nine per centum (9%) per annum.

6.   The Brewers did not follow the procedure set out in Rule 56(f) to delay the decision on summary judgment until after completion of discovery. Nor did the Brewers utilize the procedure established in syllabus point 1 of *Powderidge Unit Owners Assn. v. Highland Properties, Ltd.,* 196 W.Va. 692, 474 S.E.2d 872 (1996):

An opponent of a summary judgment motion requesting a continuance for further discovery need not follow the exact letter of Rule 56(f) of the West Virginia Rules of Civil Procedure in order to obtain it. When a departure from the rule occurs, it should be made in written form and in a timely manner. The statement must be made, if not by affidavit, in some authoritative manner by the party under penalty of

not presented with any evidence, other than counsel's arguments, that would demonstrate an intent by the contractual parties to have HMA assume all liabilities. Without supporting evidence no factual issue underlying the alleged ambiguity was presented for a jury determination. See *Williams v. Precision*, 194 W.Va. at 61 n. 14, 459 S.E.2d at 338 n. 14 ("self-serving assertions without factual support in the record will not defeat a motion for summary judgment").

## IV.

## CONCLUSION

In view of the foregoing, we affirm the circuit court's order granting summary judgment to HMA.

Affirmed.

WORKMAN and STARCHER, JJ., dissent.

MAYNARD, J., deeming himself disqualified, did not participate in the decision of this case.

JOLLIFFE, Judge, sitting by temporary assignment.

WORKMAN, J., dissenting:

(Filed July 17, 1998)

This court has consistently held that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. *See Clint Hurt & Associates, Inc. v. Rare Earth Energy, Inc.*, 198 W.Va. 320, 480 S.E.2d 529 (1996), *Dawson v. Nor-*

*folk and Western Ry. Co.*, 197 W.Va. 10, 475 S.E.2d 10 (1996), *VanKirk v. Green Const. Co.*, 195 W.Va. 714, 466 S.E.2d 782 (1995), *Watts v. West Virginia Dept. of Health and Human Resources/Division of Human Services*, 195 W.Va. 430, 465 S.E.2d 887 (1995), *HN Corp. v. Cyprus Kanawha Corp.*, 195 W.Va. 289, 465 S.E.2d 391 (1995), *Raines v. White*, 195 W.Va. 266, 465 S.E.2d 266 (1995), *Akers v. West Virginia Dept. of Tax and Revenue*, 194 W.Va. 456, 460 S.E.2d 702 (1995), *Scyoc v. Holmes*, 192 W.Va. 87, 450 S.E.2d 784 (1994), *Fraley v. Family Dollar Stores of Marlinton, West Virginia, Inc.*, 188 W.Va. 35, 422 S.E.2d 512 (1992), *Billiter v. Melton Truck Lines, Inc.*, 187 W.Va. 526, 420 S.E.2d 286 (1992), *Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 332 S.E.2d 597 (1985).

This agreement is not ambiguous.

As part of the terms of the Agreement of Sale, HMA contracted to assume "*all* accounts payable and other liabilities of Hospital, *represented* to be in the approximate amount of One Hundred Thousand Dollars[.]" (emphasis added)

As the trial court indicated, it was not a very wise agreement.[1] But there it is in plain English: *All* liabilities. The phrase "represented to be in the approximate amount of One Hundred Thousand Dollars" is just what it says: a *representation* by one of the parties to the contract, although (it turns out) an incorrect one.

However, if the trial court believed this agreement was ambiguous, then it should have permitted the parties to have presented

---

perjury or by written representations of counsel. At a minimum, the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier. Although the Brewers did not request a continuance to permit completion of discovery, counsel for the estates of Dr. Salton and Dr. Tchou asked

the court to defer the decision on summary judgment to permit discovery for the purpose of determining whether HMA had insurance covering the Brewers' claim. The circuit court denied the request based upon its determination that HMA did not contract to assume the liability.

1. The trial court at hearing transcript pages 12–13, said:

I can't imagine that a hospital today would buy the assets and liabilities of a hospital, or a partnership where you have a couple of surgeons, and nobody knows what you are buying if you buy those liabilities.... It just doesn't make good sense to me that a modern business entity, which is what a primary hospital is, would *do* something that foolish.

evidence with regard to their intentions at the time of the making of the contract. We have found that:

> If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.

*Fraternal Order of Police v. City of Fairmont,* 196 W.Va. 97, 468 S.E.2d 712, 716 n. 7 (1996).

In this case, after noting that the contract "could be clearer," the trial court nevertheless went on to interpret the contract without inquiring into the intent of the parties.

It appears that the court here determined that there was an ambiguity in order to render what the court believed to be a fairer result. Perhaps it was fairer. But that is not the proper role of a court. Both of these parties were represented by lawyers in the negotiation of this agreement, and presumably the hospital's lawyer was able to have included in the written agreement the provision which the court imposed, if that was the intention of the parties at the time of the making of the agreement. Courts should not be in the clean-up business for lawyers.

I am authorized to state that Justice STARCHER joins in this dissent.