**L.D. HARRISON and Debra Harrison, Appellants,**

v.

**Christopher LEACH, Appellee.**

**No. 2010–SC–000018–DGE.**

Supreme Court of Kentucky.

Oct. 21, 2010.

---

**16.** *Patrick v. Christopher East Health Care,* 142 S.W.3d 149 (Ky.2004).

**17.** *Eadie v. Complete Co., Inc.,* 142 S.W.3d 288, 291 (Tenn.2004).

James Walter Baechtold, Shumate, Flaherty, Eubanks & Baechtold, PSC, Richmond, KY, Counsel for Appellants.

Kimberly Carter Blair, Blair & Rowady, P.S.C., Winchester, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

This case asks us to determine if an appellate court may, on its own motion, dismiss an appeal when it determines a party lacked standing to bring an action in the trial court, even though no party had raised a purported lack of standing at any point in the proceedings below. Because the issue of standing is distinct from the issue of subject-matter jurisdiction and, thus, can be waived, we hold that an appellate court cannot, on its own motion, resolve an appeal based upon a lack of standing before the trial court.

## I. FACTUAL AND PROCEDURAL HISTORY.

Because the issue in this appeal is purely a legal one, it is not necessary for us to recite the facts in great detail. Christopher Leach and his former wife, Emily, are the parents of three children, J.L., H.L., and N.L. L.D. and Debra Harrison are the maternal grandparents of these children. Because of allegations of dependency, neglect, or abuse, a family court placed the children in the temporary physical custody of the Harrisons. The Harrisons eventually petitioned a circuit court for full custody of the children. The circuit court referred the custody matter to its domestic relations commissioner (DRC).[1]

---

1. The 23rd Judicial Circuit of Kentucky, the trial court in which the custody action arose, is a general jurisdiction circuit court that does not have a family court division.

The DRC found that the parties had stipulated that the Harrisons did not qualify as de facto custodians even though they had apparently "been the primary care givers of the children for some time as a result of placement by the Cabinet [for Families and Children] and court order . . . ."[2] Although KRS 403.420 was already repealed at the time,[3] the DRC, nevertheless, stated that "[t]he right of a non-parent to initiate a custody action in Kentucky is set forth in KRS 403.420(4)(b)." The DRC recounted testimony that Emily abused the children and that Christopher failed adequately to protect the children from Emily's abuse. But the DRC concluded that there was insufficient evidence to establish that Christopher was an unfit parent and that the evidence supported a conclusion that Emily was only an unfit parent of J.L. The DRC's report recommended a conclusion that Christopher be granted sole permanent custody of all three children.

The Harrisons filed exceptions to the DRC's report. The trial court ultimately rejected the DRC's conclusions, finding that Emily presented "a serious danger to the physical, mental, and emotional health of [J.L., H.L.] and [N.L.] and . . . that Chris[topher] is incapable of protecting the children from such danger." Memorably, the trial court found that it "fears three potential homicides if the children are returned to Chris[topher] . . . ." So the trial

court awarded permanent sole custody of the children to the Harrisons.

Christopher appealed the trial court's decision to the Court of Appeals. Although nobody had questioned the Harrisons' standing to seek custody of the children, the Court of Appeals, acting on its own motion, concluded that the repeal of KRS 403.420 meant that the Harrisons lacked standing to seek custody of the children.[4] That lack of standing, the Court of Appeals concluded, also meant that the trial court lacked subject-matter jurisdiction to determine the Harrisons' action for custody of the children. So the Court of Appeals vacated the trial court's order granting custody of the children to the Harrisons and remanded the case to the trial court with directions to dismiss the custody proceedings.

We granted the Harrisons' motion for discretionary review. The question of whether the Harrisons should be granted custody of the children is not before us. The precise question before us is whether an appellate court may act upon its own motion to decide an appeal based upon a purported lack of standing of one of the litigants. We conclude that standing is distinct from subject-matter jurisdiction. And a party may waive a right to contest standing. So an appellate court may not, on its own motion, raise the issue of standing of one of the parties to the appeal and then proceed to adjudicate the appeal on grounds of standing when no party has in

---

**2.** Kentucky Revised Statutes (KRS) 403.270(1)(a) defines *de facto custodian* as: a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services.

**3.** *See* 2004 Ky. Acts Ch. 133 (H.B.91) § 46.

**4.** We summarized KRS 403.420 as "limit[ing] standing to commence a child custody action to a parent, a de facto custodian of the child, or a person other than a parent only if the child is not in the physical custody of one of the parents." *B.F. v. T.D.,* 194 S.W.3d 310, 310 (Ky.2006).

any manner questioned another party's standing.

## II. ANALYSIS.

The issue of what effect the repeal of KRS 403.420 had upon the ability of a nonparent to seek custody of children is important. But that question is not really before us. Instead, this appeal revolves around the concept of standing. More specifically, the question is whether the Court of Appeals erred by resolving the case on the Harrisons' purported lack of standing even though we have been directed to nothing to indicate, nor have we independently located, anything to show that Christopher had ever raised that issue below. In other words, the question before us is whether a purported lack of standing may be waived or if a lack of standing is not waivable because a lack of standing by a plaintiff deprives a court of subject-matter jurisdiction.

Before we address whether standing may be waived, we must first attempt to define the term. A leading legal dictionary defines *standing* as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."[5] Our precedent similarly defines *standing* as a "require[ment] that a party have a judicially recognizable interest in the subject matter of the suit."[6] So, in order to have standing, the Harrisons would need to have a judicially recognizable interest in the subject-matter of the suit—*i.e.*, the custody and care of the children. Clearly, the Harrisons had an interest in the custody of the children. Where the Court of Appeals found they lacked standing was the fact that they had no judicially recognizable interest in the custody of the children because, in the Court of Appeals' view, the repeal of KRS 403.420 left the nonparent Harrisons without a statutory mechanism to seek custody of the children. In the Court of Appeals' view, that lack of standing caused the trial court to lack subject-matter jurisdiction over this action.

Some courts follow the Court of Appeals' approach. Admittedly, the concepts of standing and subject-matter jurisdiction are at least somewhat related. But our precedent and strict recognition of the material differences between standing and subject-matter jurisdiction lead us to the conclusion that an appellate court cannot resolve, on its own motion, a case based upon what it perceives to be a lack of standing if the issue of standing has never been raised by any party. The issue of subject-matter jurisdiction cannot be waived because it goes to the very heart of a court's ability to determine an issue in controversy,[7] but the issue of standing is a defense that may be waived.

We begin our analysis by discussing why standing and lack of subject-matter jurisdiction are not synonymous. The key difference is that subject-matter jurisdiction involves a court's ability to hear a type of case while standing involves a party's ability to bring a specific case. Our predecessor Court quoted, with approval, an opinion of the New York Court of Appeals that held that "subject matter does not mean 'this case' but 'this kind of case.'"[8] More recently, we reaffirmed our adherence to the proposition that subject-matter jurisdiction depends on whether a court has the

**5.** BLACK'S LAW DICTIONARY (8th ed.2004).

**6.** *Commonwealth v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 205 (Ky.2007) (internal quotation marks omitted).

**7.** *See, e.g., Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970).

**8.** *Id.,quoting In re Estate of Rougeron,* 17 N.Y.2d 264, 270 N.Y.S.2d 578, 217 N.E.2d 639, 643 (1966).

ability to hear "this kind of case," instead of "this case." [9] As previously mentioned, however, standing focuses more narrowly on whether a particular party has the legally cognizable ability to bring a particular suit. Although the concepts bear some resemblance to each other, standing is distinct from subject-matter jurisdiction.

■ Because the 23rd Judicial Circuit of Kentucky does not have a family court division, the trial court, as a general jurisdiction circuit court, certainly had the inherent power and ability to adjudicate child custody cases.[10] The trial court did, therefore, have subject matter jurisdiction over the Harrisons' action. At most, the trial court may have improperly exercised its general jurisdiction over child custody matters by resolving the Harrisons' particular claims.[11] But one party's inability to seek a judicial determination of a particular matter (i.e., a lack of standing) does not mean that a court itself lacks subject-matter jurisdiction. So the Court of Appeals erred by conflating the issue of the Harrisons' standing with the larger issue of whether the trial court had subject-matter jurisdiction over child custody disputes.

■ Having determined that the trial court had subject-matter jurisdiction over this type of case does not end our inquiry because we must next determine whether a lack of standing by the Harrisons in this particular case may be addressed by the Court of Appeals on its own motion or whether Christopher's failure to raise standing in any manner in the trial court meant that the issue had been waived. Consistent with general Kentucky precedent, we conclude that Christopher had waived any issues related to standing. Because Christopher waived objection to the Harrisons' purported lack of standing to bring the custody action, the Court of Appeals erred by injecting standing into the case.

The Court of Appeals concluded that the repeal of KRS 403.420 meant that there was no statutory vehicle by which the Harrisons could seek custody of the children. Although that issue is interesting, we need not delve into it in this case because we conclude that Christopher waived any objection to the Harrisons' lack of standing. Even were we to presume solely for the sake of argument that the Harrisons lacked standing, the Court of Appeals erred by raising the issue for Christopher's benefit even though Christopher himself had not done so.[12]

---

**9.** *Gordon v. NKC Hospitals, Inc.*, 887 S.W.2d 360, 362 (Ky.1994) ("This Court's decision in *Duncan v. O'Nan*, [451 S.W.2d 626 (Ky. 1970)], and cases cited therein, provides a proper analysis of subject matter jurisdiction under Kentucky law. Among the stated principles are that subject matter jurisdiction cannot be created by waiver or conferred by agreement; and that in general, 'subject matter' does not mean 'this case,' but 'this kind of case.' *Duncan v. O'Nan* makes it clear that a court is deprived of subject matter jurisdiction only in cases 'where the court has not been given any power to do anything at all.' ").

**10.** *See generally* Ky. Const. § 112.

**11.** *Cf. Karahalios v. Karahalios,* 848 S.W.2d 457, 460–61 (Ky.App.1993) (rejecting argu-

ment that Kentucky court lost subject-matter jurisdiction over a case because of a previously-filed case in Tennessee because a federal parental kidnapping prevention act "does not work to deprive the circuit courts of general jurisdiction over the subject matter of child custody proceedings. All it does is direct the courts to refrain from exercising their jurisdiction under certain circumstances. It may be that, in light of [the federal statute], the Wayne Circuit Court improperly exercised its jurisdiction. However, this is not to say that that court had no jurisdiction over the subject matter of child custody proceedings.").

**12.** Although we need not definitively determine the issue because it is not necessary to resolve this appeal, we note that the Harrisons perhaps had standing to seek at least

We begin our analysis by quoting from Kentucky precedent, which unambiguously holds that "where a court has general jurisdiction of the subject matter, a lack of jurisdiction of the particular case, as dependent upon the existence of particular facts, may be waived." [13] Although that quote does not use the term *standing*, we believe its clear thrust is that an opposing party may waive any question regarding another party's inability to bring a particular action under particular facts.

We are aware that "[a] lack of standing cannot, in some jurisdictions, be waived." [14] It appears, however, that the conclusion that lack of standing cannot be waived is premised upon the flawed concept that standing is inextricably interwoven with a trial court's subject-matter jurisdiction.[15] But we have already explained that a trial

---

temporary custody of the children under KRS Chapter 620, which governs dependency, neglect, and abuse actions.

**13.** *Collins v. Duff*, 283 S.W.2d 179, 182 (Ky. 1955).

**14.** 1A C.J.S. *Actions* § 102 (2010).

**15.** *See, e.g., Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo.2002) ("Standing is a jurisdictional matter antecedent to the right to relief. It asks whether the persons seeking relief have a right to do so. Where, as here, a question is raised about a party's standing, courts have a duty to determine the question of their jurisdiction before reaching substantive issues, for if a party lacks standing, the court must dismiss the case because it does not have jurisdiction of the substantive issues presented. Lack of standing cannot be waived.") (citations omitted). *See also* 4 C.J.S. *Appeal and Error* § 303 (2010) ("it has been held that the issue of standing to sue can be raised for the first time on appeal, because lack of standing, which implicates jurisdiction, defeats subject-matter jurisdiction and cannot be waived.") (footnotes omitted).

We are also aware that the United States Supreme Court has taken a seemingly contrary viewpoint. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("Neither the District Court nor the Court of Appeals determined whether petitioners had standing to challenge any particular provision of the ordinance. Although neither side raises the issue here, we are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.") (citation omitted). We respectfully conclude, however, that this directive is not binding upon us because it was premised on a valid concern for the inescapable fact that the federal courts are courts of limited jurisdiction, meaning that standing is a paramount concern in federal court and a federal court should be on a constant vigil to determine if an action properly belongs in federal court. *Id.* ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (quotation marks omitted). Since Kentucky circuit court is a court of general jurisdiction, as explained earlier, the same jurisdictional concerns are not as prevalent. Moreover, we do not believe the issue of whether standing may be waived in Kentucky state courts is a matter that is controlled by the United States Constitution, meaning that we are not inherently bound by the Supreme Court's pronouncements on that issue. Indeed, the inapplicability of the Supreme Court's pronouncements in this limited area is highlighted by the fact that, although they do not necessarily address *City of Dallas*, several state courts have issued decisions since *City of Dallas* holding that standing may be waived or may not be addressed on appeal if not presented to a trial court. *See, e.g., Camp v. McNair*, 93 Ark.App. 190, 217 S.W.3d 155, 159 (2005); *Sabatino v. Capco Trading, Inc.*, 27 A.D.3d 1019, 813 N.Y.S.2d 237, 239 (N.Y.App.Div.2006); *Brewer v. Hospital Management Associates, Inc.*, 202 W.Va. 163, 503 S.E.2d 17, 19 n. 4 (1998); *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43, 46 n. 6 (1998); *Wilkinson v. Florida Fish and Wildlife Conservation Com'n*, 853 So.2d 1088, 1090 (Fla.Dist.Ct.App.2003); *Skolnick v. Altheimer & Gray*, 191 Ill.2d 214, 246 Ill.Dec. 324, 730 N.E.2d 4, 19 (2000); *Presutti v. Pyrotechnics by Presutti*, No. 02–BE–49, 2003

court's subject-matter jurisdiction is distinct from standing, so we reject a commingling of the terms to reach a conclusion that a lack of standing defeats or somehow overrides a trial court's subject-matter jurisdiction.

■ Instead, we join with the courts of our sister states who have held that any question regarding a lack of standing is waived if not timely pled.[16] It has been held that a right to contest standing may be waived, even in child custody cases.[17] This application of waiver to standing is entirely consistent with our precedent, which holds that "where a court has general jurisdiction of the subject matter, a lack of jurisdiction of the particular case, as

dependent upon the existence of particular facts, may be waived." [18] So we conclude that lack of standing is a defense which must be timely raised or else will be deemed waived.

This use-it-or-lose-it approach to standing is logical because, as an Illinois appellate court noted, "the purpose of ... defenses, such as lack of standing, is to afford the defendants the means of obtaining at the outset of litigation summary disposition of issues of law or easily proved issues of fact." [19] Since a defendant benefits from early termination of a case due to a plaintiff's lack of standing, we believe a defendant should not be permitted to stand mute at the trial court level regarding standing, only to raise the

WL 21054736 at *1 (Ohio Ct.App. May 7, 2003).

16. *See, e.g., Camp,* 217 S.W.3d at 159; *Sabatino,* 813 N.Y.S.2d at 239 ("Third, defendants argue that since plaintiffs lacked standing to bring the declaratory judgment action, Supreme Court lacked jurisdiction to render a decision therein. While the argument raised has merit, since a stranger to an insurance policy may not bring an action for a declaratory judgment concerning the extent of an insurer's duty to defend ... and because Insurance Law § 3420(b)(1) allows a plaintiff to sue the insurance company only after entry of judgment which has remained unsatisfied for more than 30 days, the issue of plaintiffs' lack of standing was not raised in Supreme Court either by pleading or on the motions. Lack of standing is a waivable defense. As it was waived in Supreme Court, it cannot now be raised as a grounds for reversal.") (citations omitted); *Brewer,* 503 S.E.2d at 19 n. 4 (refusing to consider question of standing since that issue was not raised before lower court); *Walt Robbins, Inc. v. Damon Corp.,* 232 Va. 43, 348 S.E.2d 223, 226 n. 2 (1986) ("An ancillary issue, never preserved by the appellees in the court below, questions the appellants' standing to assert the rights of the trustees and the beneficiary. We need not decide whether a named defendant has standing to object to a plaintiff's non-joinder of a necessary party-defendant, for a standing question cannot be raised for the first time on appeal.").

17. *Camp,* 217 S.W.3d at 159 ("For her first point on appeal, Christina argues that the trial court erred in permitting Caree and Mark Ogiela to intervene in the custody proceedings because they lacked standing. Christina did not make this argument below, and, in order to preserve an issue on appeal challenging a party's standing, the appellant must have raised the issue below. Our court has stated many times that it will not consider arguments raised for the first time on appeal, and even constitutional arguments must be raised below. In this case, Christina's response to the Ogielas's motion to intervene urged the trial court to dismiss the petition. However, in her response, she did not argue for dismissal based on lack of standing. Accordingly, this court cannot reach the merits of this argument on appeal.") (citations omitted).

18. *Collins,* 283 S.W.2d at 182.

19. *In re Custody of McCarthy,* 157 Ill.App.3d 377, 109 Ill.Dec. 687, 510 N.E.2d 555, 557 (1987). *See also Glisson v. City of Marion,* 188 Ill.2d 211, 242 Ill.Dec. 79, 720 N.E.2d 1034, 1039 (1999) ("The phrase 'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. Lack of standing is an affirmative matter ....") (citation and quotation marks omitted).

issue on appeal (or, as in this case, continue to ignore the issue but ultimately benefit from an appellate court's raising it on its own). Such an approach would be a grossly inefficient use of the time and resources of the parties and of trial courts and would be a disincentive for attorneys to comply with their duty thoroughly and timely to determine the legal standing of all parties at the infancy of litigation.[20]

Since Christopher did not in any way raise the issue of standing before the trial court, the Court of Appeals erred by injecting standing into the case on its own motion. The Court of Appeals compounded that error by equating standing with a lack of subject-matter jurisdiction and resolving the case based upon a standing doctrine that had not been raised in any manner by any party. We agree with the Supreme Court of Pennsylvania that "[b]ecause the question of standing is not an issue of subject matter jurisdiction, we [*i.e.*, an appellate court] cannot raise it *sua sponte*."[21] So even in cases in which there is a genuine issue about whether a party lacks standing, an appellate court should refuse to inject standing into a case if the parties have not done so themselves.[22]

In summary, therefore, the concepts of standing and subject-matter jurisdiction are distinct. Since a lack of standing does not deprive a trial court of subject-matter jurisdiction, a party's failure to raise timely his or her opponent's lack of standing may be construed as a waiver. Since standing may be waived, an appellate court errs by injecting it into a case on its own motion.

Application of those legal concepts to this case leads to the conclusion that, as discussed at oral argument in this matter, Christopher waived his right to contest the Harrisons' standing by failing to raise the issue below. The Court of Appeals erred, therefore, by determining on its own motion that the Harrisons lacked standing.

The merits of this action (*i.e.*, whether the Harrisons or Christopher are entitled to custody of the children) are not before us in this appeal since the Court of Appeals did not address the merits in its decision. We must reverse the decision of the Court of Appeals and remand this matter to that court for a determination on the merits of Christopher's appeal. A determination of what effect, if any, the repeal of KRS 403.420 had upon the ability of a nonparent who is also not a de facto custodian to file for custody of children must await a case in which the issue is properly and squarely before us.

---

**20.** *In re Custody of McCarthy*, 109 Ill.Dec. 687, 510 N.E.2d at 557 ("Here, petitioners had to endure a prolonged and difficult custody hearing which was spread out over almost 11 months. They, undoubtedly, incurred large legal fees. The emotional toll of the proceeding must have been significant. Also, petitioners and the minor children were doubtless growing accustomed to living with the petitioners.").

**21.** *Hertzberg*, 721 A.2d at 46 n. 6. *But see, e.g., Aufenkamp v. Grabill*, 112 S.W.3d 455, 458 (Mo.Ct.App.2003) ("a challenge to standing may be raised at any time, including *sua sponte* by this court.").

**22.** *Sabatino*, 813 N.Y.S.2d at 239. *But see* 4 C.J.S. *Appeal and Error* § 303 ("it has been held that the issue of standing to sue can be raised for the first time on appeal, because lack of standing, which implicates jurisdiction, defeats subject-matter jurisdiction and cannot be waived. Moreover, an appellate court may raise a party's lack of standing on its own motion. There is, however, authority to the effect that lack of standing is waived where the issue is not raised in trial court.") (footnotes omitted).

## III. CONCLUSION.

The opinion of the Court of Appeals is vacated, and this matter is remanded to that court for a determination on the merits.

All sitting. ABRAMSON, NOBLE, SCHRODER, and VENTERS, JJ., concur.

CUNNINGHAM, J., dissents by separate opinion in which SCOTT, J., joins.

CUNNINGHAM, J., Dissenting:

I decline to vote in favor of the bright line rule that a party must "use or lose" the claim of lack of standing at the trial level. Therefore, I respectfully dissent.

With an ever increasing number of pro se litigants, especially in the area of family law, I fear what might befall from our holding here today. Humble and oft times uneducated parents representing themselves in their flawed efforts to keep their children should not be expected to possess the legal prowess of a learned lawyer. They should not be required to pay for their failure to raise standing at trial with the possible loss of their children. In those instances, at least, appellate courts must maintain some ability to level the playing field.

Finally, I note in passing that our decision here today is at odds with that reached by the United States Supreme Court in *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). That was the "pledge of allegiance" case that was jettisoned by our nation's highest court on lack of standing without ever reaching the merits of the dispute. Standing had not been raised at the trial level.

SCOTT, J., joins.