GROW TRIGG, INC., Appellant,

v.

TRIGG COUNTY/JUDGE EXECUTIVE; Trigg County Clerk; Trigg County Fiscal Court; Trigg County Board of Elections; and Roy D. Ezell, as Representative for Election Petitioners in Montgomery Precinct, Appellees.

No. 2010–CA–000269–MR.

Court of Appeals of Kentucky.

May 13, 2011.

W.E. Rogers, III, Hopkinsville, KY, for appellant.

Donald E. Thomas, Benton, KY, for appellee, Ezell as Representative for Petitioners in Montgomery Precinct.

Before COMBS, THOMPSON, and VANMETER, Judges.

*OPINION*

COMBS, Judge:

Grow Trigg, Inc., appeals a declaratory judgment of the Trigg Circuit Court that permits a precinct in Trigg County to hold a local option (wet/dry) election. Following careful review, we reverse.

The facts are not disputed by either party. On September 29, 2009, Trigg County held an election to determine whether it would allow the sale of alcoholic beverages. By a narrow margin of thirty-six votes, the county abolished prohibition. On November 12, 2009, a group of residents in the Montgomery Precinct filed a petition to hold a **new** election in that precinct only. The county judge executive consulted with the Kentucky Board of Elections and with the Kentucky Alcohol Beverage Control Board. These two bodies rendered conflicting opinions. Therefore, upon recommendation of the Trigg county attorney, the county judge executive filed a declaratory judgment action in the Trigg Circuit Court.

In December 2009, the citizens of Montgomery Precinct, joining as petitioners, named Roy Ezell as their representative for the legal proceedings. The court, *sua sponte*, added Grow Trigg, Inc., as a respondent. The court explained that it wanted to hear arguments on both sides of the issue. Grow Trigg is a citizen group that worked to hold the initial county-wide election with the aim of improving the local economy by allowing the sale of alcoholic beverages. After reviewing briefs and hearing oral arguments from both parties, the court found that the citizens of Montgomery Precinct do have a legal right to hold their own election for their precinct alone. Grow Trigg then filed this appeal.

■ Preliminarily, Ezell argues that Grow Trigg does not have standing in this case. However, because Ezell did not argue the issue in a cross-appeal, we are precluded from addressing it. *Jackson v. Mackin*, 277 S.W.3d 626, 630 (Ky.App. 2009). *See also Harrison v. Leach*, 323 S.W.3d 702 (Ky.2010).

■ Grow Trigg argues that the statutory scheme governing local option elections prohibits Montgomery Precinct from holding an election until three years after

the county-wide election. After examining the pertinent law, we are compelled to agree.

Section 61 of Kentucky's Constitution confers upon the General Assembly the authority to determine policy and to draft laws regulating alcohol. Kentucky Revised Statute[s] (KRS) 242.030 sets forth the requirements for a local option election. It mandates that "[n]o local option election shall be held in the same territory more than once in every three (3) years." KRS 242.030(5). As Grow Trigg acknowledges, the courts have already addressed this situation in which an individual precinct held an election less than three years after a county-wide election. *Campbell v. Brewer*, 884 S.W.2d 638 (Ky.1994). In the case before us, the trial court based its findings and ruling on the holding of *Campbell.*

In *Campbell,* Wolfe County had voted to abolish prohibition. Within three months, all sixteen precincts in the county filed petitions to hold individual elections. By a 4–3 vote, Supreme Court held that the elections were permissible, reasoning that a county and a precinct are separately distinct entities; thus, the bar against a new election did not apply. It relied on the premise that the results of an election held in a precinct would only apply to that precinct—not to the entire county.

Grow Trigg urges us to disregard *Campbell* and to treat its case as one of first impression. Grow Trigg argues that the General Assembly directly responded to *Campbell* by amending the pertinent statutes—thus invalidating *Campbell.*

At the time that *Campbell* was decided in 1994, the statute that provided definitions for Chapter 242 was KRS 242.010. It defined *territory* as a "county, city, district, or precinct." In 1998, the General Assembly amended the statutes by repealing KRS 242.010 and incorporating the

definitions enumerated by KRS 241.010. The current statute does not include a definition for *territory.* Grow Trigg contends that the legislature purposely deleted that definition so that precincts would not be considered territories. Thus, it contends that *Campbell* no longer applies.

Grow Trigg construes the *Campbell* decision as having been premised on the statutory definition of *territory.* However, *Campbell* focused on the definition of the phrase *same or identical territory,* with an emphasis on what was meant by the words *same* and *identical*—not what comprised a *territory.* As noted above, the Court's narrow majority held that a precinct was not the **same** territory as a county. Again, the statutory definition in effect at that time subdivided territory into four geographic possibilities: "county, city, district, **or,** precinct." (Emphasis added.)

Grow Trigg has relied upon the statutory changes in 1998 as evidence of legislative intent to alter the scope and impact of *Campbell.* We have reviewed the legislative history that was contemporaneous with the amendments, and we are not wholly persuaded that they were motivated by a desire to modify the rule of *Campbell.* The changes at issue were actually a small part of a sweeping overhaul and revision of alcohol control laws which had not been evaluated in nearly fifty years. *Campbell* was not referenced in the legislative history.

Furthermore, the General Assembly did not eliminate all statutory references of a *precinct* as a *territory.* KRS 241.010(22) defines a *dry territory* as "a county, city, district, or **precinct** in which a majority of voters have voted in favor of prohibition[.]" (Emphasis added). Other statutes also refer to precincts synonymously as territories. *See* KRS 242.1292; KRS 242.1297. We also note the language of KRS 242.123, which allows local option elections in **precincts** that include golf courses.

Nonetheless, despite the mixed juxtaposition in several statutes of *precinct* and *territory,* we are compelled to analyze with particularity the language of the current version of KRS 241.010 as amended after the *Campbell* decision. It is a fact that the statute bears no narrow definition of *territory* and that it does not enumerate or set forth divisions or subdivisions of *territory.* As amended, therefore, KRS 241.030 dictates a three-year prohibition for holding a local option election **in the same territory**—a more expansive geographic concept that does not recognize lesser geographic units as part of the composition of the county for purposes of the prohibition. The language is clear on its face in not limiting *territory* to any subdivision.

We construe the omission of specific limitations to be a deliberate exclusion of the former statutory limitations—**including that of precinct.** *Campbell* relied on the existence of *precinct* in the former statutory definition of *territory* as constituting an exception to a broader construction of *territory.* Since the legislature was aware of *Campbell* and deliberately omitted the limiting language referencing *precinct* when it re-enacted KRS 241.010, we are persuaded that *Campbell* no longer applies and that the new statutory language results in a county-wide, three-year limit for holding local option elections. To hold otherwise would produce an absurd result, and we are bound to construe statutes so as to avoid an absurd outcome. *Revenue Cab. v. O'Daniel,* 153 S.W.3d 815, 819 (Ky.2005).

Although the trial court logically invoked *Campbell* in its analysis, we hold that *Campbell* has been superseded by the 1998 legislative amendment to KRS 241.010. Since no local option election can be held for three years in the same overall territory—precincts notwithstanding, we

reverse the judgment of the Trigg Circuit Court.

ALL CONCUR.