RENDERED:  JUNE 4, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0283-MR


SCOTT STILLWELL AND
NANCY STILLWELL                                        APPELLANTS



                    APPEAL FROM HART CIRCUIT COURT
v.            HONORABLE JOHN DAVID SEAY, JUDGE
                    ACTION NO. 14-CI-00234



SAM C. DEITWEILLER,
MARY LOU DEITWEILLER,[1]
RALPH J. THOMPSON, AND
REVA RIGDON THOMPSON                                      APPELLEES


AND


NO. 2020-CA-0347-MR


RALPH J. THOMPSON AND
REVA RIGDON THOMPSON                          CROSS-APPELLANTS


---

[1] The notice of appeal in Case No. 2020-CA-0283-MR spells the Detweilers' name as "Deitweiller."  We use the correct spelling herein.

v.                          HONORABLE JOHN DAVID SEAY, JUDGE
                              ACTION NO. 14-CI-00234

SCOTT STILLWELL,
NANCY STILLWELL, SAM C.
DETWEILER, AND MARY
LOU DETWEILER                                    CROSS-APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE:  This appeal is taken from the Hart Circuit Court's findings of fact, conclusions of law, and judgment following a bench trial to quiet title in a tract of approximately 34 acres located near Priceville, Kentucky. Three sets of adjoining landowners claimed ownership of the disputed tract (hereinafter Greenacre[2]).  The trial court found that none of the parties had established record title but did find that one set of landowners had established ownership through adverse possession.  The other two sets of owners have appealed and cross-appealed.

---

[2] The disputed tract was referred to as "Greenacre" in the trial proceedings.

## Background

The action was initiated on November 25, 2014, when Scott Stillwell and his mother Nancy Stillwell (the Stillwells) filed a complaint against Sam C. Detweiler and Mary Sue Miller Detweiler (the Detweilers), and Ralph J. Thompson and Reva Rigdon Thompson (the Thompsons). The Stillwells, Detweilers and Thompsons all owned tracts of property adjoining Greenacre. The fourth adjoining landowner was not a party to the action and did not assert any interest in Greenacre. The Thompsons acquired their property by deed dated June 1, 1975; the Stillwells acquired their property by deed dated July 1, 1998; and the Detweilers acquired their property by deed dated April 11, 2007.

According to the Stillwells' complaint, the Detweilers and the Thompsons were wrongfully attempting to claim ownership and title to Greenacre. The Stillwells claimed ownership through their deeds and by adverse possession.

A bench trial was held on February 25, 2019. The trial court found that none of the parties had established record title to Greenacre and that neither the Stillwells nor the Thompsons had successfully established adverse possession of the tract.

The trial court found that the Detweilers had succeeded in their claim of adverse possession based in part on Sam Detweiler's testimony that by at least 2009 he was using Greenacre as if he was the rightful owner. He erected fences,

including an area in which he pastured horses and cattle, cleared a portion of the property with a bulldozer, cut trees for timber, and employed a surveyor to locate the boundaries of the property. The trial court further found that his period of adverse possession could be tacked onto that of the Detweilers' predecessor in title, Edith Vernice Moody. According to Sam Detweiler, the description provided by Edith Moody and her son of the property he was purchasing included the disputed tract.

The Stillwells presented evidence that they created four-wheeler trails around the perimeter of Greenacre; hunted on it; removed rocks; posted no trespassing signs; and cut firewood. The trial court found this evidence insufficient to support their claim of adverse possession because they failed to exclude the Detweilers from Greenacre. The trial court further found no evidence that the Thompsons performed any actions to support a claim of adverse possession.

The trial court ordered title to Greenacre quieted to reflect the Detweilers as the right and lawful owners and enjoined the Stillwells and Thompsons from trespassing on it. This appeal by the Stillwells and cross-appeal by the Thompsons followed. Additional facts will be set forth below as necessary.

**Standard of Review**

When we review a judgment following a bench trial, the trial court's findings of fact "shall not be set aside unless clearly erroneous, and due regard

-4-

shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kentucky Rules of Civil Procedure (CR) 52.01. A factual finding is not clearly erroneous if it is supported by substantial evidence, which is defined as evidence which has sufficient probative value to induce conviction in the mind of a reasonable person. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). The trial court's conclusions of law, however, are reviewed *de novo*. *Id.*

**Analysis**

The Stillwells and the Thompsons contend that the trial court erred in holding that the Detweilers had succeeded in establishing ownership of Greenacre by adverse possession. They further argue that their claims of adverse possession are superior to the Detweilers' claim.

To make a successful claim of adverse possession, five elements must be met: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky. 1992). Under Kentucky Revised Statutes (KRS) 413.010, these elements "must all be maintained for the statutory period of fifteen years, and it is the claimant's burden to prove them by clear and convincing evidence." *Moore v. Stills*, 307 S.W.3d 71, 77-78 (Ky. 2010) (citations omitted). In a case such as this, with three competing claimants, it must be emphasized "that

a plaintiff seeking to establish title must sustain his claim either by record title or adverse possession; he must recover on the strength of his title and not upon the weakness of his adversary's title, or the fact that his opponent has no title." *Gabbard v. Lunsford*, 308 Ky. 836, 838, 215 S.W.2d 985, 986 (1948).

As a preliminary matter, the Stillwells contend that Sam Detweiler lacked standing to assert adverse possession and the trial court should have dismissed his claim on that basis. The factual background is as follows: Sam Detweiler and his wife acquired their property by deed from Edith Vernice Moody in 2007. On December 27, 2012, they conveyed the property by deed to their children and their children's spouses, Marlin Detweiler and his wife, Mary Lou Detweiler; Joseph D. Miller and his wife, Rebecca Miller (formerly Detweiler), and Jason Detweiler and his wife, Rose Detweiler (collectively the Detweiler Children).

The Stillwells' complaint, filed in 2014, named the Detweilers as defendants and stated that if they were claiming an interest to the disputed property "by virtue of their deed from Edith Vernice Moody . . . and contend that their claim is alive through their actions of this conveyance to their children" then the Detweilers should be required to bring in the Detweiler Children as co-defendants to the action to assert such a claim.

In their answer, the Detweilers admitted that their property was conveyed to the Detweiler Children but denied that the conveyance did not include the disputed property. They denied that it was their obligation to bring the current record owners as defendants to the lawsuit and stated that the plaintiffs should bring them in as indispensable parties under CR 19. The Stillwells filed an amended complaint naming the Detweiler Children as defendants on April 21, 2015.

The Detweiler Children ultimately sold their interests in the property back to the Detweilers in May 2018 and were dismissed with prejudice from the lawsuit by orders entered in August 2018, approximately five months prior to trial.

The Stillwells argue that the trial testimony of the Detweiler Children showed they took no adverse possessory interests in the disputed tract and therefore their successor in title, Sam Detweiler, also lacked standing to pursue an adverse possession claim. One of the Detweiler Children, Jason Detweiler, testified in his deposition that he had never been on the disputed property or put up a fence around it; Marlin Detweiler testified that he had never been on the property; and Joseph Miller testified that he had walked the property two or three times. The Stillwells further argue that because the Detweiler Children were dismissed as defendants prior to trial, they lacked standing and, consequently, Sam Detweiler as their successor in title also lacked standing.

The Stillwells claim the issue is preserved in a motion for summary judgment they filed in June 2016. But the memorandum supporting that motion argued only that the Detweilers and the Detweiler Children failed to meet their burden of proving adverse possession. The Stillwells claim that the issue was also preserved in Sam Detweiler's deposition, which was taken on February 10, 2016, and during cross-examination of Detweiler at trial. But the trial court never expressly ruled on this issue nor did the Stillwells request such a ruling.

"The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citations omitted). "It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court." *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) (citation omitted).

Furthermore, "lack of standing is a defense which must be timely raised or else will be deemed waived." *Harrison v. Leach*, 323 S.W.3d 702, 708 (Ky. 2010). "This use-it-or-lose-it approach to standing is logical because . . . the purpose of . . . defenses, such as lack of standing, is to afford the defendants the means of obtaining at the outset of litigation summary disposition of issues of law or easily proved issues of fact." *Id*. (internal quotation marks and citations omitted). The Stillwells were aware from the outset of the litigation of the sale of

the property from the Detweilers to the Detweiler Children but did not raise their argument regarding standing in a timely manner. "Since a lack of standing does not deprive a trial court of subject-matter jurisdiction, a party's failure to raise timely his or her opponent's lack of standing may be construed as a waiver." *Id*. at 709. We will not consider the issue of standing because it was not raised in a timely manner and was consequently waived and in any event was never expressly ruled upon by the trial court.

Next, the Stillwells and the Thompsons argue that there was insufficient evidence to support the trial court's finding that Detweiler met the fifteen-year period for adverse possession by tacking his time onto that of his predecessor in title, Edith Vernice Moody. "[T]he adverse possession of a grantee may be tacked on to that of his grantor to complete the statutory period." *Cole v. Gilvin*, 59 S.W.3d 468, 475 (Ky. App. 2001) (internal quotation marks and citation omitted). The Thompsons further argue that there was no evidence Detweiler occupied or used Greenacre in any way between 2007 and 2009, which meant his possession was not continuous.

Sam Detweiler testified that he first visited Greenacre in 2007, before purchasing the Moody farm, when Mrs. Moody's son took him there to show him the property. The Moodys did not want to survey the property when Detweiler bought it, so he testified that he relied on the description provided by the Moodys

and on a Property Valuation Administrator (PVA) map which he claimed showed Greenacre as part of the property.

In 2009, Detweiler purchased an adjoining farm and retained Ashton McPherson, a professional surveyor, to perform a survey. McPherson testified that he and Detweiler assumed the two properties would form one big farm but he could not find deeds for Greenacre. McPherson explained that many relevant property records were destroyed in a fire at the Hart County Courthouse in 1926. McPherson said he spoke with Mrs. Moody who believed the Moody family had owned Greenacre.

Sam Detweiler testified that he and Stillwell used to be friends and Stillwell never told him to stay off Greenacre until Stillwell became angry after Detweiler cut timber on the property. Detweiler testified that Mrs. Moody told him Greenacre was his property. He indicated on a plat of the property that there is an old roadway that came up from the Moody farm through Greenacre, and Mrs. Moody told him that she told Stillwell he could not use it because it was "her road."

As evidence of his adverse possession of Greenacre, Detweiler testified that he performed dozer work for waterways, bush hogged the power lines every year, kept horses and cattle there, put up a fence, put up "no hunting" signs, cut timber, and put in a hunting shack. This activity commenced mainly in 2009.

The Stillwells and the Thompsons contend there is a dearth of evidence of adverse possession by the Moodys and what evidence there is consists of Sam Detweiler's self-serving testimony. The Stillwells purchased their property in 1998. Stillwell offered evidence of adverse possession by his predecessors in title, such as a photograph of a border fence, the installation of an electric transmission line easement and oil well leases, and he testified that he confronted trespassers on the property, took rocks from the property, built hunting blinds, and constructed four-wheel trails on it. On the other hand, there was also evidence that Stillwell made no effort to stop Detweiler's activities on the tract, such as keeping livestock, bulldozing, and cutting trees. Stillwell met the surveyor, McPherson, on Greenacre when he was conducting the survey for Detweiler in 2009 but did not ask him to leave. The trial court was acting well within its role as the finder of fact in giving greater weight to Detweiler's testimony. The Moodys' belief that they were the rightful owners of Greenacre, as evidenced by Mrs. Moody's statements to Detweiler and her prohibiting Stillwell from using the road through the property, could serve as evidence of the Moodys' adverse possession, which does not require a claimant to intend to take away property he or she knows belongs to another. *Bishop v. Brock*, 610 S.W.3d 347, 351 (Ky. App. 2020). "[I]t is the claimant's intention to possess property as the owner thereof, and not his intent to take irrespective of another's known right, which governs." *Id.* (internal quotation

-11-

marks and citation omitted). It is axiomatic that assessing the credibility of the witnesses is solely within the purview of trial court. "We defer to a significant degree to the circuit court, for it had the opportunity to observe, scrutinize, and assess the credibility of witnesses." *Id*. at 350. Consequently, the trial court's decision to rely on Detweiler's testimony regarding the Moodys may not be disturbed on appeal.

As to the argument that there was a gap in Detweiler's adverse possession between 2007 and 2009, "the character of the property, its physical nature and the use to which it has been put, determine the character of the acts necessary to put the true owner on notice of the hostile claim." *Appalachian Regional Healthcare*, 824 S.W.2d at 880. The character of Greenacre did not lend itself to daily, regular usage. McPherson described the area as heavily wooded and difficult to get through, and Stillwell himself testified that the land was not suited to growing crops or keeping livestock and that his own use of the property was sporadic. Furthermore, during the period from 2007 to 2009, Detweiler's own testimony indicates he was operating under the belief that the Moodys had conveyed Greenacre to him as part of the farm; consequently, he would not have thought it necessary to exercise overt dominion over Greenacre.

The Stillwells claim title to Greenacre through the adverse possession of their predecessors in title. The initial deed in the Stillwells' chain of title dates

from 1930, showing a conveyance from S.L. and Ruth Bostic to S.M. Lawler and G.T. Tharp. That deed contains a general description of the property being conveyed as containing about 60 acres, whereas the particular description in the deed describes about 31 acres and does not include the disputed tract.

"As a general rule where a deed contains both a particular and a general description of the property conveyed, the particular will prevail over the general." *Handy v. Standard Oil Co.*, 468 S.W.2d 302, 303 (Ky. 1971). The trial court relied on this principle to conclude that the Stillwells did not have legal title to Greenacre. The trial court also considered the exception to the general rule, which applies when there is language in the deed which manifests an intention on the part of the parties to give effect to the general rather than the particular description, but the trial court found no evidence of such intent. *Id.*

The Stillwells contend that the Lawlers adversely possessed the disputed property from 1930 to 1979, and that each subsequent conveyance therefore included Greenacre. As evidence of this adverse possession, they point to evidence that during that period Lawler, Tharpe, and the Lawler heirs built a perimeter fence around the property including Greenacre, but no cross-fencing; granted oil well leases on the disputed property in 1935 and 1960; and granted a publicly recorded transmission line easement. This evidence is not sufficiently

-13-

compelling to cause us to overturn the trial court's conclusion that the particular description in the 1930 deed and subsequent deeds is controlling.

Because we agree with the trial court that the Stillwells did not prove ownership of Greenacre by deed or by adverse possession, their remaining claims for treble damages and attorney's fees for timber trespass and for costs are moot.

Finally, we address the Thompsons' argument that their claim to Greenacre is superior to that of the Detweilers and the Stillwells because they have color of title through the constructive adverse possession of Mary Douglas and Earl Crouch, the parents of the Thompsons' grantor Donna Crouch Nave and her husband Ralph Nave. A deed dating from 1950 shows that the Crouches granted oil and gas leases on 60 acres of their property. According to the Thompsons, the Crouches received royalties from eleven productive oil wells scattered over Greenacre. The Thompsons claim the leasing of the land was open, notorious, hostile, adverse, exclusive, and continuous for seventeen years after the Crouch lease was executed, at least until 1975, when the Thompsons purchased the property. Although Greenacre was not described in the 1975 deed, the Thompsons contend that the Crouches had title to Greenacre by adverse possession due to the lease. They contend that the 1975 deed, along with the oil and gas lease, created color of title and they are the owners of Greenacre by constructive adverse possession.

It is the job of the trial court to weigh the evidence. "In actions to quiet title to disputed realty, a trial court has a duty to ascertain which of the possible owners has the strongest claim of title." *Arnold v. Patterson*, 229 S.W.3d 923, 924 (Ky. App. 2007). The trial court's decision that the Detweilers' claim was stronger than that of the Thompsons is supported by substantial evidence, is therefore not clearly erroneous, and will not be reversed on appeal.

**Conclusion**

For the foregoing reasons, we affirm the findings of fact, conclusions of law, and judgment of the Hart Circuit Court.

MAZE, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

DIXON, JUDGE, CONCURRING: I concur in the majority opinion and write separately merely to address one point. I believe the majority opinion is correct for an additional reason. While both the Stillwells and Thompsons argue ownership of the disputed property by adverse possession by predecessors in each of their chains of title, the subsequent adverse possession by the Detweilers makes any prior ownership interest—by title, color of title, or adverse possession— irrelevant. The last adverse possessor becomes the owner of the disputed real property.

BRIEFS FOR APPELLANTS
SCOTT AND NANCY
STILLWELL:

Dwight Preston
Elizabethtown, Kentucky

BRIEF FOR CROSS-
APPELLANTS RALPH THOMPSON
AND REVA RIGDON THOMPSON:

Bobby H. Richardson
Glasgow, Kentucky

BRIEF FOR APPELLEES
SAM C. DETWEILER AND
MARY DETWEILER:

William T. Clauson
Munfordville, Kentucky