**Brandon Shane GRAVATT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–592C.**

United States Court of Federal Claims.

Sept. 27, 2011.

---

Brandon S. Gravatt, Yazoo City, MS, pro se.

## ORDER OF DISMISSAL

SWEENEY, Judge.

Plaintiff Brandon Shane Gravatt, a federal prisoner appearing *pro se*, alleges that through a convoluted series of events, the United States was made the trustee of an account created for his benefit and is now required to disburse to him the funds in that account. In support of his claims, plaintiff submits a vast array documents, including Uniform Commercial Code ("UCC") financing statements, tax forms, correspondence with two federal district courts and various federal employees, notarized letters and affidavits, and his birth certificate. The court finds that summary adjudication is appropriate in this matter and dismisses plaintiff's complaint for lack of jurisdiction. The court further finds plaintiff's complaint to be frivolous.

## I. BACKGROUND

### A. The Sovereign Citizen Movement

Plaintiff's complaint and the attached materials reflect that plaintiff adheres to the belief that even though he was born and resides in the United States, he is his own sovereign and is therefore not a United States citizen. This belief is the hallmark of the sovereign citizen movement.[1] So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings. *See, e.g., Brown v. United States,* 105 F.3d 621 (Fed. Cir.1997) (describing an attempt to avoid payment of federal income taxes); *United States v. Schneider,* 910 F.2d 1569 (7th Cir. 1990) (describing an attempt to present a defense in a criminal trial); *Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753 (W.D.Va.2007) (describing an attempt to satisfy a mortgage).

The goal of some sovereign citizens is the recovery of money from the United States that they actually—in the form of taxes—or purportedly paid to the government. *See, e.g., Ambort v. United States,* 392 F.3d 1138 (10th Cir.2004) (describing attempts to obtain a refund of federal income taxes); *Troxelle v. United States,* No. 10–312C, 2010 WL 3982349 (Fed.Cl. Oct. 6, 2010) (unpublished opinion) (describing the plaintiff's allegations that the issuance of his birth certificate and social security number created debts that the government was required to repay to him).

---

1. The beliefs and tactics of the sovereign citizen movement have been described by various government and nongovernmental agencies. *See generally The Sovereign Citizen Movement,* Fed. Bureau of Investigation, http://www.fbi.gov/news/stories/2010/april/sovereigncitizens_041310 (last visited Sept. 22, 2011); *Sovereign Citizen Movement—Extremism in America,* Anti–Defamation League, http://www.adl.org/learn/ext_us/SCM.asp?xpicked=4 (last visited Sept. 22, 2011); Sovereign Citizens Movement, Southern Poverty Law Center, http://www.splcenter.org/get-informed/intelligence-files/ideology/sovereign-citizens-movement (last visited Sept. 22, 2011).

As the Honorable Norman K. Moon explained, such claims are premised upon the following beliefs:

Supposedly, prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities). Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.

Because the populace is unaware that their birth certificates and such are actually contracts with the government, these contracts are fraudulent. As a result, the officers of government are liable for treason unless they provide a remedy that allows an individual to recover what she is owed—namely, the profits held in her trust account, which the government has made from its use of her and her property in the

commercial markets. In 1933, the government provided just such a remedy with House Joint Resolution 192, and the Uniform Commercial Code (UCC) provides the means for a person to implement it. The fact that virtually no one is aware of this remedy or how to use it is all part of the government's scheme—if no one takes advantage of the remedy, the government can keep the money, so it is in the government's interest that the remedy be obscure.

*Bryant,* 524 F.Supp.2d at 758–59 (footnotes omitted); *see also id.* at 758 n. 8 ("Further thickening the plot, the name of the fictitious entity is the real person's name in all-capital letters, which apparently explains why names are commonly written in all-capital letters on birth certificates, driver's licenses, and other government documents."). To collect the money held by the United States in the "secret, individual trust accounts," sovereign citizens employ the process known as "redemption." *Id.* at 759. In this process, sovereign citizens file one or more UCC financing statements naming themselves as both the secured party and the debtor, with the intent "to register a security interest in the fictitious entity that was created by [their] birth certificate and other government documents...."[2] *Id.* Typically, the secured party's name is written using only initial capital letters and the debtor's name is written in all capital letters. *Id.* at 759 & n. 11; *United States v. Beeman,* No. 1:10–cv–237–SJM, 2011 WL 2601959, at *11 (W.D.Pa. June 30, 2011).

### B. Plaintiff's Factual Allegations

The series of events that forms the basis of plaintiff's complaint closely tracks the scheme described above.[3] Plaintiff alleges that his birth certificate is evidence of a trust for which he was both the grantor and the

---

**2.** This appears to be a variation of the sovereign citizen tactic referred to as "paper terrorism"—the filing of fraudulent UCC financing statements and default judgments against government agencies and officials, such as the United States Department of Justice, the Internal Revenue Service ("IRS"), judges, prosecutors, and clerks of court. *See, e.g., Monroe v. Beard,* 536 F.3d 198, 202–03 (3d Cir.2008), *aff'g* 2007 WL 2359833 (E.D.Pa. Aug. 16, 2007); *United States v. Belt,* Civil No.

PJM 10–2921, 2011 WL 3236065, at *4 (D.Md. July 26, 2011).

**3.** The court derives the facts in this section from the complaint, the documents attached to the complaint, and the decision in an earlier case filed by plaintiff in this court, *Gravatt v. United States,* No. 09–848T, slip op. (Fed.Cl. Mar. 7, 2011).

beneficiary and that his social security number is evidence of a contract under which the United States has borrowed money from him. He contends that the Secretary of the Treasury, as trustee, held the funds borrowed from him in a "National Registry/Trust Account" and, as bailee, accepted a bond from the trust. Plaintiff states that the trust account was used to issue United States Treasury Bonds and Notes and that the funds in the trust account were paid into the court and later deposited in the United States Treasury.

In 2008, plaintiff filed a UCC financing statement with the California Secretary of State naming "Brandon Shane; Gravatt(c)1995" as the secured party and "BRANDON SHANE GRAVATT(c)1995" as the debtor, along with several documents purporting to establish that "Brandon Shane; Gravatt(c)1995" was a sovereign citizen and not a citizen of the United States. Early in 2009, plaintiff transmitted several documents to the Secretary of the Treasury—including a "Certified Offset Bond," a "Memorandum for Certified Bond–Bond Order," a " 'Non–Negotiable' Charge Back," a " 'Non–Negotiable Bill of Exchange'-Trade Acceptance in Accord With HJR–192," his birth certificate, a "draft" 2008 IRS Form 1040–V ("Payment Voucher"), and an IRS Form 56 ("Notice Concerning Fiduciary Relationship")—requesting that the Secretary remit to him a total of $400,000,000 from his trust account.

Two months later, plaintiff sent the following documents to the United States Department of the Treasury/IRS; the United States District Court for the Northern District of Florida and its clerk; and the United States District Court for the District of South Carolina, its clerk, and one of its judges:[4] "Letter of Advice–Rogatory and Notice by Written Communication of Release of Lien and Personal Property and Direction to Close Account and Return All Property"; the federal government's optional forms 90 ("Release of Lien on Real Property") and 91 ("Release of Personal Property From Escrow"); and the federal government's standard forms 24 ("Bid Bond"), 25 ("Performance Bond"), 26A ("Payment Bond"), and 28 ("Affidavit of Individual Surety"). Plaintiff also appears to have sent a variety of 2008 IRS forms—including Form 1040–V, Form 1099–A ("Acquisition or Abandonment of Secured Property"), and Form 1099–OID ("Original Issue Discount")[5]—to the United States, the Florida and South Carolina district courts, the United States Department of Justice, and the State of Texas.[6] On these forms, he represented that he was owed amounts ranging from $72,000,000.00 to $324,004,801.68. Ultimately, some of the documents and forms were returned to plaintiff unprocessed or unfiled and none of the entities or individuals who received the documents and forms sent any money to plaintiff.

Plaintiff first filed suit in the United States Court of Federal Claims ("Court of Federal Claims") on December 7, 2009, seeking an income tax refund of $838,000,012.76 for the 2008 tax year. While that suit was pending, plaintiff sent the Tax Division of the United States Department of Justice several IRS forms for the 2009 tax year, including a Form 1096, two Form 1099–As, ten Form 1099–OIDs, and two Form 1040–Vs. The amounts on these forms ranged from $2,401.05 to $96,004,802.10. The Court of Federal Claims held that it lacked jurisdiction over plaintiff's tax refund claim because plaintiff had not paid the taxes he sought to have refunded or filed a refund claim with the IRS prior to filing suit. It therefore dismissed plaintiff's complaint.

In the spring of 2011, not long after his first suit in the Court of Federal Claims was dismissed, plaintiff had a notary public, El-

---

**4.** Plaintiff presumably sent the documents to the federal courts because he is currently serving concurrent 211– and 292–month sentences in federal prison after pleading guilty to various drug charges in Florida and South Carolina. *See United States v. Gravatt*, No. 3:02–cr–00005–LC–1 (N.D.Fla. filed Dec. 13, 2001); *United States v. Gravatt*, No. 5:01–cr–00736–CMC–1 (D.S.C. filed Nov. 2, 2001).

**5.** Plaintiff also completed, for the 2008 tax year, an IRS Form 1096 ("Annual Summary and Transmittal of U.S. Information Returns"), but there is no clear indication to whom the form was sent.

**6.** The State of Texas was targeted presumably because it is the state of plaintiff's birth.

waine Barrett, send a "Public Notice–Certificate of Protest and Breach" to the Florida and South Carolina district courts. This document was in the form of an affidavit sworn and executed by Mr. Barrett.[7] In the document, Mr. Barrett claimed that he had presented a "draft" in the form of a "Tenth Amendment Supplemental Administrative Notice and Petition for Post Judgment Relief by Special Visitation" to the district courts on plaintiff's behalf and "demanded performance" of the draft, but that performance was "refused for no cause given." Mr. Barrett therefore sent each district court a "Public Notice–Notice of Protest and Breach" and a "Public Notice–Certificate of Non–Response (Dishonor)." The former document was a letter executed by Mr. Barrett on his own letterhead,[8] and the latter document was in the form of an affidavit sworn and executed by Mr. Barrett.[9] Plaintiff later filed additional UCC financing statements with the California Secretary of State naming "BRANDON SHANE GRAVATT(c)1995" as the secured party and the United States, the United States Department of the Treasury/IRS, the United States District Court for the Northern District of Florida, the United States District Court for the District of South Carolina, the United States Department of Justice, and the State of Texas as debtors.

Plaintiff filed the present suit on September 14, 2011. He alleges that he has formally requested that the Secretary of the Treasury close his trust account and remit to him the funds contained in the account, but that the Secretary has not done so. In his prayer for relief, he requests a declaration that he is entitled to the trust funds held by the Secretary; an order that the United States provide an accounting of the trust and return to plaintiff all of the trust funds with interest; and an injunction preventing the United States from retaliating or harassing him for filing this lawsuit, continuing to imprison him, and restraining his personal property, secured collateral, and other assets.

## II. JURISDICTION

### A. Legal Standard

 Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the existence of subject matter jurisdiction at any time. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004).

 When considering whether to dismiss a complaint for lack of jurisdiction, a court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). A *pro se* plaintiff's complaint, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'...." *Hughes v. Rowe*, 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, a *pro se* plaintiff is not excused from meeting basic jurisdictional requirements. *See Henke*, 60 F.3d at 799 ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a *pro se* plaintiff

---

7. Mr. Barrett also affixed his seal of office to the affidavit, in effect notarizing his own signature. The affidavit was separately notarized by a second notary public.

8. In his letter, Mr. Barrett indicated that plaintiff "came" before him on May 13, 2011. Mr. Barrett is a notary public in the State of Texas, with an address in Houston. Plaintiff has been incarcerated at the Federal Correctional Institution-

Low in Yazoo City, Mississippi since at least December 7, 2009, when he filed his first suit in the Court of Federal Claims. Presumably, Mr. Barrett traveled to Mississippi in order that plaintiff could appear before him.

9. Mr. Barrett once again affixed his seal of office to the affidavit even though he was the individual executing it. A second notary public notarized the affidavit.

is not excused from his or her burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

 The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

### B. Plaintiff's Jurisdictional Allegations

 Plaintiff alleges that the Court of Federal Claims possesses jurisdiction over his complaint based upon the Tucker Act, 28 U.S.C. § 1491 (2006), the principal statute governing the jurisdiction of this court. The Tucker Act waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. *Id.* § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994) (en banc). Plaintiff alleges that the substantive right arises in his case from express and implied contracts with the United States and from three statutory provisions.[10]

### 1. Express Contract

 Construing the complaint in plaintiff's favor, plaintiff alleges that his birth certificate and social security number are express contracts with the United States. Such allegations are frivolous and cannot support the court's exercise of jurisdiction in this matter. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir. 1997) (requiring a "well-pleaded allegation" of an express contract "to overcome challenges to jurisdiction"); *accord Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307 (Fed.Cir.2008) (holding that a plaintiff must make "nonfrivolous assertion that [he or she] is within the class of plaintiffs entitled to recover under the money-mandating source"). Birth certificates are legal documents issued by the state in which a birth occurs, and social security numbers are a form of identification issued by the Social Security Administration, an agency of the federal government. Neither birth certificates nor social security numbers recognize or impose contractual rights, obligations, or duties. *Cf. Troxelle*, 2010 WL 3982349, at *3–4 (holding that the issuance of a social security number does not constitute a taking under the Fifth Amendment of the United States Constitution). Thus, to the extent that plaintiff's complaint contains a claim for breach of an express contract, the court is required to dismiss that claim for lack of jurisdiction.

### 2. Implied Contract

 Plaintiff next alleges a breach of an implied contract with the United States. The jurisdiction of the Court of Federal Claims over such claims "extends only to contracts ... implied in fact, and not to claims on contracts implied in law." *Hercules Inc. v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). The United States Supreme Court has explained the distinction:

> An agreement implied in fact is "founded upon a meeting of minds, which, although

---

10. At no point in his complaint does plaintiff characterize his claim as one for a refund of taxes. If he did, however, his claim would likely be barred by collateral estoppel, which "forec- los[es] relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." By contrast, an agreement implied in law is a "fiction of law" where "a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress."

*Id.* at 424, 116 S.Ct. 981 (citations omitted). To the extent that plaintiff alleges an implied-in-law contract, the court must dismiss his claim for lack of jurisdiction.

 Jurisdiction is further dependent upon a plaintiff presenting "a non-frivolous allegation of the existence of an implied-in-fact contract" in the complaint. *Hanlin v. United States,* 214 F.3d 1319, 1321 (Fed.Cir. 2000); *accord Jan's Helicopter Serv., Inc.,* 525 F.3d at 1307. To establish the existence of an implied-in-fact contract with the United States, a plaintiff must demonstrate: (1) "mutuality of intent to contract"; (2) "consideration"; (3) "lack of ambiguity in offer and acceptance"; and (4) that "the Government representative 'whose conduct is relied upon [had] actual authority to bind the government in contract.'" *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir. 1990) (quoting *Juda v. United States,* 6 Cl. Ct. 441, 452 (1984)). Plaintiff has not pleaded any of the elements of an implied-in-fact contract, rendering his allegation of such a contract frivolous. Indeed, all of plaintiff's allegations are nonsensical. Accordingly, plaintiff's implied-in-fact contract claim must be dismissed for lack of jurisdiction.

### 3. 28 U.S.C. § 2042

Plaintiff next identifies 28 U.S.C. § 2042 as the substantive source of jurisdiction for his complaint. Section 2042 directs that money paid into a federal court in a pending or adjudicated case and deposited with the Treasurer of the United States may only be withdrawn by court order and that "[a]ny claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him."

 The United States Court of Appeals for the Federal Circuit recently summarized the two-step analysis a court must undertake to determine whether a statute is money-mandating:

> First, the court determines whether any substantive law imposes specific obligations on the Government. If that condition is met, then the court proceeds to the second inquiry, "whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes." The Court of Federal Claims has jurisdiction if the substantive law at issue is "reasonably amenable to the reading that it mandates a right of recovery in damages."

*Samish Indian Nation v. United States,* 657 F.3d 1330, 1335 (Fed.Cir.2011) (citations omitted). Section 2042 concerns funds deposited with a court incident to litigation. *See, e.g., Alstom Caribe, Inc. v. George P. Reintjes Co.,* 484 F.3d 106 (1st Cir.2007) (concerning settlement funds paid into the court); *Leider v. United States,* 301 F.3d 1290 (Fed.Cir.2002) (concerning money paid into a court during bankruptcy proceedings). It therefore does not obligate the government to pay money to claimants. Rather, it describes the requirements for the disbursement of money paid into the court by private parties. Moreover, because section 2042 does not impose any specific monetary obligations on the government, it cannot provide a basis for the payment of damages. Accordingly, section 2042 is not a money-mandating source of jurisdiction under the Tucker Act.

 It also bears noting that plaintiff's assertion of jurisdiction under 28 U.S.C. § 2042 is frivolous on its face because the provision does not apply to the Court of Federal Claims. *Compare* Fed.R.Civ.P. 67 (concerning the deposit of property with a court and specifically citing 28 U.S.C. § 2042), *and* Fed.R.Civ.P. 1 (noting that the Federal Rules of Civil Procedure apply to "proceedings in the United States district courts"), *with Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (per curiam) ("The Court of Federal Claims is not a district court of the United States...."), *and* R.

U.S.Ct. Fed. Cl. 67 (noting that Federal Rule of Civil Procedure 67 is not used in the Court of Federal Claims). And, because the Court of Federal Claims does not accept deposits in pending or adjudicated cases, there is no possibility that the court is holding any money to which plaintiff could be entitled. Accordingly, plaintiff's section 2042 claim must be dismissed.

### 4. 31 U.S.C. §§ 1321(b)(1), 1322

■ Plaintiff next asserts that 31 U.S.C. §§ 1321(b)(1), 1322 provide a substantive source of jurisdiction under the Tucker Act. Section 1321(b)(1) requires that amounts received by the United States to be held in trust with the United States as trustee be "deposited in an appropriate trust fund account in the Treasury" and "disbursed in compliance with the terms of the trust." Section 1322 requires the Secretary of the Treasury to transfer unclaimed trust funds into a special account from which claims to those funds can be paid. The court need not reach the issue of whether these provisions are money-mandating because plaintiff's contention that he falls within their ambit is patently frivolous. It strains all logic and reason to believe that the trust fund alleged by plaintiff actually exists. Indeed, as Judge Moon aptly described, the belief in the existence of such trust funds is "equal parts revisionist legal history and conspiracy theory." *Bryant*, 524 F.Supp.2d at 758. Absent a credible allegation that he is a beneficiary of a trust to which the United States serves as trustee, plaintiff could not be "within the class of plaintiffs entitled to recover" under sections 1321(b)(1) and 1322 if those provisions were money-mandating. *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1307. Accordingly, the court must dismiss plaintiff's claims under sections 1321(b)(1) and 1322 for lack of jurisdiction.

### 5. Equitable Relief

■ Finally, plaintiff seeks, in addition to the funds in the nonexistent trust account, declaratory and injunctive relief. The court, however, lacks jurisdiction to grant such equitable relief in the absence of a money judgment in a plaintiff's favor. *See Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir.1998) ("Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." (citations omitted)). Because the court lacks jurisdiction to award plaintiff money damages for his claims, it cannot grant the equitable relief requested by plaintiff. Accordingly plaintiff's request for equitable relief must be dismissed for lack of jurisdiction.

### C. Conclusion

Plaintiff fails to allege any claim for money damages over which the court could exercise its jurisdiction under the Tucker Act. As a result, it also lacks jurisdiction over plaintiff's requests for declaratory and injunctive relief. Accordingly, the court must dismiss plaintiff's complaint.

### III. PLAINTIFF'S COMPLAINT IS FRIVOLOUS

■ Plaintiff is currently incarcerated at the Federal Correctional Institution–Low in Yazoo City, Mississippi. When a prisoner sues the United States, the court must screen the prisoner's complaint to identify both cognizable claims and those claims that should be dismissed. 28 U.S.C. § 1915A. The court must then dismiss those claims that are frivolous, malicious, or fail to state a claim upon which relief may be granted. *Id.* § 1915A(b). Because plaintiff's factual allegations are nonsensical and because the court lacks jurisdiction over all of plaintiff's claims, the court finds that plaintiff's complaint is frivolous pursuant to section 1915A(b)(1). This finding represents a "strike" under 28 U.S.C. § 1915(g). Plaintiff is cautioned that unless he "is under imminent danger of serious physical injury," he will be prevented from filing civil actions or appeals without the prepayment of the filing fee if, while incarcerated, he accumulates three or more "strikes," *i.e.*, if he files more than three actions or appeals in federal court

that are dismissed as frivolous, malicious, or failing to state a claim. *Id.* § 1915(g).

## IV. FAILURE TO PAY THE FILING FEE

As a final matter, plaintiff neither paid the court's filing fee nor submitted an application to proceed *in forma pauperis.* Thus, for the purposes of this ruling, the court presumes that plaintiff seeks to proceed without the prepayment of the filing fee. Prisoners who file a complaint without the necessary filing fee, however, must still pay, over time, the filing fee in full. *Id.* § 1915(b). Thus, plaintiff shall be assessed, as a partial payment of the court's filing fee, an initial sum of twenty percent of the greater of (1) the average monthly deposits into his account, or (2) the average monthly balance in his account for the six-month period immediately preceding the filing of his complaint. *Id.* § 1915(b)(1). Thereafter, plaintiff shall be required to make monthly payments of twenty percent of the preceding month's income credited to his account. *Id.* § 1915(b)(2). The agency having custody of plaintiff shall forward payments from plaintiff's account to the clerk of the Court of Federal Claims each time the account balance exceeds $10 and until such time as the filing fee is paid in full. *Id.*

## V. CONCLUSION

As explained above, the court lacks jurisdiction over plaintiff's complaint. Moreover, plaintiff's complaint is frivolous. Accordingly, plaintiff's complaint is **DISMISSED.** In addition, the court directs plaintiff to pay the filing fee in full pursuant to 28 U.S.C. § 1915(b), as set forth above. No costs. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**