J-S22030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEVAR LEE SPENCE | : | |
| | : | |
| Appellant | : | No. 87 MDA 2021 |

Appeal from the PCRA Order Entered January 4, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003301-2015

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED AUGUST 30, 2021**

Levar Lee Spence (Appellant) appeals *pro se* from the January 4, 2021, order of the York County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] He argues that the PCRA court erred in finding his petition to be untimely. We affirm. We also deny Appellant's *pro se* "Application to Expedite" this appeal.

> On April 15, 2015, a search warrant was executed by the York County Drug Task Force at a room at the Econolodge [in York, Pennsylvania,] based on probable cause gained from a heroin buy setup between a confidential informant and [Appellant]. Appellant was found inside the hotel room along with a large amount of heroin packaged for distribution, cash, and a small amount of marijuana.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

PCRA Ct. Op., 3/10/21, at 1-2. Appellant's convictions arise therefrom. He presents the following two questions for our review:

1. Did Appellant's judgment of sentence become final on March 31, 2016?

2. Did the PCRA court err in finding [that] none of the exceptions to the one-year filing period applied in this case?

Appellant's Brief at 15.

Appellant was caught with a terrific amount of heroin, an amount that could only indicate an intent to distribute. **See** PCRA Ct. Op. at 1-2; N.T. Trial, 1/12/16 & 1/14/16, at 178-79.[2] He was caught with packaging material. **See id.** He was caught selling and he was subsequently convicted upon proof beyond a reasonable doubt. **See id.** Since his arrest, he has chosen to obstruct, obscure, and deflect rather than participate in good faith in his trial, sentencing, or rehabilitation.[3] This does not bode well for his prospects at

_____

[2] Appellant was tried on January 12 and 14, 2016. The notes of testimony from his trial are a single volume, the cover of which bears both dates.

[3] We observe with sympathy that the federal courts have recently borne witness to Appellant's routine as well. **See**, **e.g.**, **Spence v. Superintendent Coal Twp. SCI**, 2020 WL 4199679, at *1 (3d Cir. June 11, 2020) ("Even if this were his first appeal, we would dismiss it as untimely."); **see also Spence v. Superintendent Coal Twp. SCI**, 2019 WL 11866463, at *1 (3d Cir. Apr. 24, 2019), *cert. denied sub nom.* **Spence v. McGinley**, 140 S.Ct. 412 (2019), *reh'g denied*, 140 S.Ct. 864 (2020) ("Even if jurists of reason could debate the correctness of the District Court's procedural-default ruling, they would agree that Spence has not stated 'a valid claim of the denial of a constitutional right.'").

becoming reacquainted with free society. You may think this Court is exaggerating. We are not.

Since his arrest, Appellant has insisted on representing himself, and has taken these proceedings on a twisted path that we describe below. Ultimately, we have no jurisdiction to grant the relief he requests, and the irony of that fact can only be appreciated in the context of Appellant's behavior.

Appellant has pursued a legal strategy that is both utterly ineffective for its intended purpose, and a source of harm for its user. Appellant seems unaware that his strategy is not having its intended effect, and the more energy and effort he invests in his pseudolegal artifice, the more plainly he is exposed.

From Appellant's catalogue of complaints, several themes emerge. Appellant asserts that the trial court lacked jurisdiction over him, and thus that his trial, conviction, and judgment of sentence are *void ab initio*. In the beginning, this theory had a distinctly "sovereign citizen" contour.[4] He made the following assertions in court, prior to his trial:

- "You do not have me on record as a party defendant." N.T. Trial at 13.

- ". . . [T]he contract says, am I a human being or am I a legal entity or are they the same?" ***Id.*** at 17.

---

[4] Appellant's own recounting of the facts acknowledges that "sovereign citizen" paperwork was found in his hotel room. ***See*** Appellant's Brief at 5.

- "When you say myself, you're speaking of the party defendant on record, correct?" *Id.* at 20.

- "Now, I am a nonjuridical person." *Id.* at 22.

- "I'm not a legal entity, nor am I a juridical person, so a nonjuridical person would be a natural person or a human being." *Id.* at 23.

- "Actually, I wasn't notified, nor was the party, the Defendant, notified." *Id.* at 25.

- "Once again, can you procure a jury of my peers that are nonjuridical?" *Id.* at 26.

- "Is it noted on the court that I am the occupant of the executive office still [appearing] specially and not generally? . . . Of the all capital letters — I'm going to repeat the question — of the all capital letters, [Appellant then spelled his name] Estate, on behalf of — what I'd asked was, is it on the Court's record that I am the sole and private occupant of the executor office of the, all capital letters, [Appellant's name] Estate appearing specially and not generally." *Id.* at 39-40.

- "You do understand I can only sign [the jury waiver form] in a representative capacity." *Id.* at 43.

Though later he would take great umbrage at being characterized as having claimed to be a sovereign citizen, Appellant's early interactions in these proceedings are plainly rife with the characteristics of that quixotic and malign

school of pathological legal behavior.[5] Foundational to the sovereign citizen

playbook is the idea that one can simply opt out of the rules that bind the rest

of us, while still living in the United States and enjoying the fruits of civilization

as administered therein. Like a sovereign citizen claimant, Appellant played

silly games in court filings, such as listing his address as within the "Spence

Province" of Philadelphia, in the United States Minor Outlying Islands. ***See,***

***e.g.***, "Breve Libertatis," 3/16/16, at 9 (unpaginated).[6]

_____

[5] At least one federal appellate court has approved taking into account a defendant's participation in "sovereign citizen" antics as a negative factor at sentencing, despite the defendant's free speech and political claims to the contrary on appeal, as such participation was relevant to motive and in rebutting mitigation. ***See United States v. Ulloa***, 511 Fed.Appx. 105, 108 (2d Cir. 2013). To the extent that it can be characterized as a movement, it is associated with white supremacists and other bad actors with dubious moral judgment. ***See, e.g., United States v. Cook***, 2019 WL 2721305, at *3 n.5 (E.D. Tenn. 2019) ("The sovereign citizen movement, itself rooted in white supremacist ideology, is replete with financial conspiracy theories that are often explicitly anti-Semitic.").

[6] So-called sovereign citizens claim they are "not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." ***Gravatt v. United States***, 100 Fed. Cl. 279, 282 (Fed. Cl. 2011). This exceedingly selective idea of jurisdiction, and the litigation behavior it seems to inspire, have been rejected consistently. ***See, e.g., United States v. Sterling***, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (courts routinely reject sovereign citizen legal theories as "frivolous"), *citing* ***United States v. Benabe***, 654 F.3d 753, 761–67 (7th Cir. 2011) (sovereign citizen theories "should be rejected summarily, however they are presented"); ***Roach v. Arrisi***, 2016 WL 8943290, at *2 (M.D. Fla. 2016) (sovereign citizen theories are "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citation omitted).

Appellant was convicted at a bench trial on January 14, 2016, of possession with intent to deliver a controlled substance (PWID) and possession of a small amount of marijuana. On March 1, 2016, he received a sentence of three to eight years of imprisonment for PWID, with a concurrent term of 15 to 30 days of imprisonment for possession of a small amount of marijuana.[7] There was no appeal.

On January 9, 2020, Appellant filed a *pro se* petition pursuant to the PCRA.[8] On February 4, 2020, this Court received a petition from Appellant, which was sent to the PCRA court. Appellant filed several subsequent petitions or similar filings while that petition was still pending. On December 1, 2020, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907, and on December 31st, the PCRA court dismissed Appellant's PCRA petition (and the subsequent filings). On January 8, 2021, Appellant filed a notice of appeal, and he filed a statement pursuant to Pa.R.A.P. 1925(b) on January 19th.

The PCRA court recognized, as we must also, that Appellant's filings are facially untimely under the PCRA. PCRA Ct. Op. at 4-6. Thus, regardless of the gravamen of Appellant's substantive complaints, unless he establishes

---

[7] 35 P.S. § 780-113(a)(30), (31).

[8] This petition was dismissed by order on January 21, 2020, and Appellant filed a responsive notice of appeal, which was docketed at 368 MDA 2020. This Court determined that the order of January 21st was not final, and thus quashed that appeal. **See** Order, **Commonwealth v. Spence**, 368 MDA 2020 (Pa. Super. Aug. 26, 2020).

that his filings satisfy the requirements of an exception to the PCRA's time bar, no jurisdiction lies to grant relief. The PCRA requires that any petition filed over one year after the petitioner's conviction has become final must allege, and the petitioner prove, that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). The PCRA court correctly observes that Appellant's sentence became final on March 31, 2016, thirty days after imposition of sentence on the first of the month. To be timely filed, Appellant's petition thus had to have been filed within one year of that date. It plainly was not; Appellant filed his first petition on January 9, 2020. "Appellant in one of his five petitions made the bald assertion that all of his claims fall within one or more of the timeliness exceptions — specifically, interference by government officials or newly discovered evidence." PCRA Ct. Op. at 5-6 (footnote omitted). He now claims that he actually filed a timely notice of appeal, and that government interference and new facts create adequate jurisdictional grounds. Appellant's Brief at 15.

Appellant's legal theory at trial (which he maintains; see below) was untenable in the extreme. He asserted that Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101 *et seq.*, does not apply to human beings. "Human beings are not included in 780-113 or 780-102 even in 30 or 31." N.T. Trial at 24. As a matter of statutory interpretation, this argument is so faulty as to be laughable – reading the statute in its entirety, it plainly lays out the consequences for the behavior of individuals who violate it. Therefore, how could the General Assembly have intended that it not apply to such individuals? It is unclear whether this "argument" is related to Appellant's feint at a pretrial challenge to jurisdiction.

The majority of Appellant's interactions with the courts have proceeded similarly, with Appellant advancing legal theories that make it clear Appellant has no intention of taking his own time in court (or the court's time) seriously at any point. However, there are some claims that this Court must submit to serious analysis in its resolution of this case. Appellant claims that he actually **did** file a timely notice of appeal from his judgment of sentence, which was not docketed by the trial court. He describes his "Breve Quorum Praetextu" as "for all intent[s] and purposes a 'NOTICE to appeal,' that had also incorporated a written request for 'the entire trial transcript' and claims raised

for direct appeal."[9]  Appellant's Brief at 13.  He claims this "filing" was dated March 9, 2016.  *Id.*

Appellant was explicitly warned during his colloquy that if he wanted to represent himself, he would be held to the same standard as an attorney, and would have to comply with the same rules that an attorney would.  N.T. Trial at 17.  A review of his "Breve Quorum Praetextu" reveals that it bears absolutely no resemblance to Pa.R.A.P. 904, governing the form and content of a notice of appeal.[10]  It lists its contents as a "nonjuridical assertion," a contents page, a "breve libertatis," a statement, and an introductory "Breve Ad Gravamen to Breve Videlicet, which all comprise (1) One Breve Quorum Praetextu . . ." but no notice of appeal.  *See* Appellant's Brief, Exh. 5 at 1.  If we thought it even remotely possible that Appellant was participating in good faith but simply filed a deficient notice of appeal, this would be a very different matter.  Instead, Appellant prioritized his preening routine of foolish, bad-faith

---

[9] Appellant's filings are peppered with patent misrepresentations of the record, which makes it difficult to engage with them at all.  For instance, in his brief, he asserts "[Appellant] had requested 'competent counsel,' and continued to request counsel, during a colloquy to waive his right to counsel.  *See* . . . Trial Transcript, pgs. 13-22."  Appellant's Brief at 10.  Consulting the cited pages of his notes of testimony reveals that he actually asserted, repeatedly, that "[t]here is no attorney that can represent me."  N.T. Trial at 14, 22.

[10] Rule 904 includes a formal example of a notice of appeal, and directs that except as otherwise prescribed therein, "the notice of appeal shall be in substantially the . . . form" thus established.  Pa.R.A.P. 904(a).  The Rule thus communicates that the Notice of Appeal is not an opportunity for argument, but a simple, formal notification.

interactions with the courts, and quite intentionally flouted the appellate process he now claims he intended to invoke.

Further, the trial court entered an "Order Regarding Request for Trial Transcripts" that notified Appellant of the plain fact that this filing he now claims was a notice of appeal "does not even approximate the form and content required of a proper notice of appeal." *See* Order, 5/12/16. It also notes the tardiness of Appellant's filing for purposes of appeal, and that as a result "[t]his court . . . has no jurisdiction to act in this matter." *Id.* Upon receipt of this order, Appellant failed to take action to correct his error. His PCRA petition was not filed until 2020.

Appellant argues that the trial court denied him his right to counsel at trial, and that if it had not done so, "he would have been able to assert his rights without denial or delay." Appellant's Brief at 15. On January 14, 2016, while the trial court was trying to take Appellant through the appropriate colloquies, he asserted that he is a "nonjuridical person" and that "[t]here is no attorney that can represent me." N.T. Trial at 14, 22.[11] Thus, his assertion that the trial court denied him his right to counsel, *see* Appellant's Brief at 15, plainly reveals itself as an easily-punctured falsehood. We can find no fault with the PCRA court's conclusion that this cannot support a finding of

_____

[11] Early in the pretrial proceedings, Appellant asserted, "I am not present, and I am not Mr. Spence. I am the executor — I am the occupant of the executive office appearing specially, not generally, and I have proof." N.T. Trial at 5.

"government interference." ***See*** PCRA Ct. Op. at 6. Appellant also asserts that he received a "Supplemental Affidavit" of probable cause, and accuses the Commonwealth of withholding it from his discovery. Appellant's Brief at 22. Review of the trial transcript reveals that any possible challenge based on discovery deficiencies is waived, as Appellant, explicitly and on the record, refused his discovery.[12]

Appellant also asserts his sentence is illegal and that this issue is not subject to waiver. Appellant's Brief at 23, 29.[13] He then reiterates his argument that he is "specifically exclude[d]" from the Controlled Substance, Drug, Device, and Cosmetic Act. Appellant's Brief at 29. He also claims that he has "searched the various statutes" and can find none that would authorize his sentence. ***Id.*** at 30. Whether Appellant is arguing that it is perfectly legal for anyone to sell heroin in Pennsylvania or whether there is some special quality only he holds that makes it legal for **him** to sell heroin here, this argument cannot support relief.[14]

_____

[12] When offered his discovery, Appellant responded by saying "[that discovery packet] is not my discovery material. I refuse that." N.T. Trial at 10. Though he may have eventually accepted his discovery, any possible complaint sounding in discovery is waived.

[13] Appellant also asserts that his challenge to the trial court's jurisdiction is also not subject to waiver. Appellant's Brief at 29. To the extent that it is coherent enough to be subject to analysis, we determine that he has not presented any facially plausible challenge to the trial court's jurisdiction at trial.

[14] Seemingly unable to stop himself, Appellant also asserts a sentencing claim relating to the weight of drugs attributed to him. Appellant's Brief at 31-32.

Appellant also asserts that every ill that has befallen him in this litigation is due to "the sum of judicial bias, a bias that also permeated his appeals." Appellant's Brief at 23. Our review of the record, by contrast, reveals that the judges who have dealt with Appellant have demonstrated the patience of Job. His assertions to the contrary are frivolous and made in bad faith. His criticisms of his colloquies, which he repeatedly and insistently interrupted with arguments he knew to be nonsensical, are likewise made in bad faith and cannot support relief. **See** Appellant's Brief at 25-27.

Finally, Appellant has filed an "Application to Expedite" consideration of this matter; this Court received said filing on August 2, 2021. It lists no legitimate reason why Appellant is entitled to such preference. Appellant has not participated in good faith in this litigation. We conclude that he is not entitled to this Court's, nor any court's, endless patience and good faith, when he makes repeated bad-faith engagement.

Order affirmed. Appellant's "Application to Expedite" denied.

---

It is a frivolous claim, especially given his refusal of discovery and his insistence on behaving as he did at trial. Further, he has not established that it is preserved, and since he chose to represent himself, it cannot possibly be raised as an ineffectiveness claim. **Commonwealth v. Fletcher**, 986 A.2d 759, 778 (Pa. 2009) (in self-representing, a defendant "relinquishes many of the benefits associated with the right to counsel, including the future right to allege ineffectiveness of counsel").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/30/2021