**Harry Anderson PALMER, Jr. and Michelle Monique Palmer, Appellants**

v.

**Kristen BURNETT and Adam Hockersmith, Appellees.**

**No. 2012–CA–000318–ME.**

Court of Appeals of Kentucky.

Nov. 2, 2012.

Thomas E. Banks, II, Louisville, KY, for Appellants.

Michael J. Levy, Louisville, KY, for Appellee.

Before ACREE, Chief Judge; DIXON and VANMETER, Judges.

*OPINION*

ACREE, Chief Judge:

The question on appeal is whether Michelle Palmer has standing to pursue grandparent visitation with her biological grandchild, Alexis, despite having voluntarily terminated her parental rights with respect to the child's mother, Kristen Burnett, prior to Alexis' birth.[1] The Jefferson

---

1. As will be explained, Michelle's husband and co-appellant Harry is not Alexis' biologi- cal grandfather; he does not claim that he qualifies as a "grandparent" for purposes of

Family Court answered in the negative, and we affirm.

## I. Background

This is a story of four generations. The story began when, in 1984, Michelle gave birth to Kristen; a year later, Michelle married Harry Palmer. Harry was not Kristen's father. In 1990, Michelle voluntarily relinquished her parental rights to Kristen and Michelle's mother, Kristen's biological grandmother, adopted Kristen.

In 2004, Kristen gave birth to Alexis; Alexis' father is Adam Hockersmith. Despite the fact that Michelle relinquished her parental rights to Kristen, she and Harry developed a close relationship with Alexis; Alexis even resided with Michelle and Harry for several months.

In December of 2010, Michelle and Harry each obtained Domestic Violence Orders against Kristen on the basis of their allegations that she had threatened to kill them. Following this incident, Kristen and Adam no longer permitted Alexis to have contact with Michelle or Harry.

Michelle and Harry subsequently initiated a custody action, asserting standing as Alexis' *de facto* custodians. Ultimately the family court determined they had not been Alexis' primary caregivers for the requisite one-year period preceding the petition, and the petition was dismissed. Kentucky Revised Statutes (KRS) 403.270(1).

Seeking to maintain some relationship with Alexis, on August 15, 2011, Michelle and Harry initiated an action pursuant to KRS 405.021, which provides for grandparent visitation.

The family court reluctantly dismissed the action for want of standing after concluding that Michelle and Harry were not Alexis' grandparents for purposes of the statute. In so doing, the family court determined the 1990 termination of Michelle's parental rights to Kristen meant Michelle was not legally Alexis' grandmother. The family court judge was adamant that a continued relationship with Michelle and Harry was in Alexis' best interest and implored this Court to intervene, stating, "This Court not only invites the Court of Appeals to overturn its findings as to standing, but hopes it will do so, allowing the [family court] to make a finding that is in the best interest of Alexis." Unfortunately, we cannot.

## II. Standard of review

The only issue before us is whether Michelle qualifies as a "grandparent" for purposes of KRS 405.021, thereby giving her standing to request visitation with Alexis. There are no factual findings or evidentiary matters in dispute, and this is entirely a matter of the application of a statute. *Hicks v. Enlow*, 764 S.W.2d 68, 71 (Ky. 1989) ("[T]he existence and extent of grandparents' rights is exclusively the prerogative of the legislature, and we are limited to interpreting and applying the statutory mandate.") (portions of the opinion unrelated to our discussion have been abrogated by statutory amendment). Our review is accordingly *de novo. Williams v. Commonwealth*, 354 S.W.3d 158, 160 (Ky. App.2011).

## III. Discussion

 Michelle contends the family court should have classified her as a grandpar-

---

the statute at issue herein or that a step-grandparent is accorded the same status as a grandparent. The only question is whether Michelle, as Alexis' biological grandmother, has standing in this matter. The appellants have presented no argument that Harry has standing. He has waived any argument to that effect, and so our discussion will focus almost exclusively on Michelle.

ent, found she had standing to proceed, and awarded her visitation with Alexis. She argues, more specifically, that her status as Alexis' biological grandmother and the legislative purposes of KRS 405.021 mandate such a result. Michelle maintains that a liberal construction of KRS 405.021 or a harmonizing of that statute with KRS 625.043 should accord her standing. We disagree.

The Supreme Court has addressed whether grandparents are statutorily entitled to visitation with their grandchild following termination of the *parents'* rights to the child. *Dotson v. Rowe,* 957 S.W.2d 269 (Ky.App.1997) (termination of parents' rights did not terminate or adversely affect the visitation rights of the grandparents). However, so far as we can tell, no Kentucky court has addressed the question confronting us now: whether a grandparent whose rights to her own child have been terminated is thereby deprived of the protections of the grandparents' visitation statute with respect to the child's offspring. We must therefore turn to the statutes in question to ascertain the answer for ourselves.

KRS 405.021(1) provides that a family court "may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so." The purposes of grandparent visitation are "to strengthen familial bonds" and to protect the grandparent-grandchild relationship despite the disintegration of the relationship between the parent and the child or the parent and the grandparent. *See* KRS 405.021; *see also King v. King,* 828 S.W.2d 630, 632 (Ky.1992).

However, termination of parental rights constitutes a permanent severance of the parent-child relationship. *D.G.R. v.*

*Cabinet for Health and Family Services,* 364 S.W.3d 106, 115 (Ky.2012). The effect of a voluntary termination is sweeping: it "terminat[es] all parental rights and obligations of the parent and releas[es] the child from all legal obligations to the parent and vest[s] care and custody of the child in the person ... the court believes is best qualified to receive custody." KRS 625.043. "In effect, if parental rights are terminated, it is as if the parents of a child suddenly died, as there is no longer a legal right to contact between the parents and child." *D.G.R.,* 364 S.W.3d at 115.

Furthermore, the subsequent adoption of the child vests all parental rights in the adoptive parent.

Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural child of the parents adopting it the same as if born of their bodies. Upon granting an adoption, all legal relationship between the adopted child and the biological parents shall be terminated except the relationship of a biological parent who is the spouse of an adoptive parent.

KRS 199.520(2).

When Michelle terminated her parental rights to Kristen, she gave up all the parental rights and obligations she had once possessed by virtue of being Kristen's biological mother. KRS 625.043. This included the future right to a relationship with Kristen's children as granted by KRS 405.021. Furthermore, when Michelle's own mother adopted Kristen, all parental rights were conferred upon Michelle's mother, and Michelle and Kristen became sisters for all legal purposes. *See* KRS 199.520(2). As Kristen notes, this means

Michelle is legally Alexis' aunt, and there is no statutory provision for visitation among a child's aunts and uncles.

Michelle has requested that we "harmonize" KRS 405.021 and KRS 625.043 to conclude that she has standing in this matter based on her biological connection to Alexis. We perceive no dissonance between the two statutes. When Michelle voluntarily terminated her legal connection to Kristen, she waived all rights which accompanied that relationship. If the legislature had wished to maintain grandparent rights despite the loss of one's parental rights to the grandchild's parent, it could easily have provided as much. It did not.

Harry has identified no authority which affords him standing in this matter.

## IV. Conclusion

Like the family court, we are disheartened by the outcome compelled by the facts of this case and our jurisprudence; but, like the family court, we must follow that jurisprudence. The family court correctly concluded Michelle and Harry lack standing to pursue visitation with Michelle's biological grandchild. The termination of Michelle's parental rights with respect to her daughter, Alexis' mother, constituted a waiver of any future grandparental rights, as well. We affirm.

ALL CONCUR.