Gelvic CUBAR, Appellant

v.

TOWN & COUNTRY BANK AND
TRUST COMPANY, Appellee

NO. 2014–CA–000983–MR

Court of Appeals of Kentucky.

RENDERED: August 28,
2015; 10:00 A.M.

MODIFIED: September
4, 2015; 10:00 A.M.

BRIEFS FOR APPELLANT: Gelvic S.
Cubar, Pro se, Bardstown, Kentucky

BRIEF FOR APPELLEE: David A.
Franklin, Natalie Damron McCormick,
Lexington, Kentucky

BEFORE: ACREE, CHIEF JUDGE;
STUMBO AND TAYLOR, JUDGES.

OPINION

ACREE, CHIEF JUDGE:

Gelvic Cubar appeals the Nelson Circuit
Court's May 5, 2014 Order Granting Sum-

mary Judgment. We find no error and affirm.

### Facts

In January, 2009, Town and Country Bank and Trust Company (Bank) loaned Cubar almost $90,000.00, secured by a mortgage on Cubar's real property, located in Nelson County. When Cubar stopped paying back the loan in 2013, the Bank began foreclosure proceedings on the property. That litigation culminated in May, 2014, when the Nelson Circuit court granted the Bank summary judgment and ordered a Master Commissioner to sell the property. Cubar appealed, *pro se.*

### Standard of Review

■ "The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith,* 366 S.W.3d 414, 419 (Ky.2012). We must "view the evidence in the light most favorable to the nonmoving party," and we will only sustain the circuit court's grant of summary judgment "if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001). "[S]ummary judgments involve no fact finding[.]" *Associated Ins. Serv., Inc. v. Garcia,* 307 S.W.3d 58, 61 (Ky.2010). Our review is *de novo. Id.*

### Analysis

We begin by noting that we afford Cubar, as a *pro se* appellant, special leniency in making arguments. *Watkins v. Fannin,* 278 S.W.3d 637, 643 (Ky.App.2009). However, leniency has a limit: Cubar must still present us with a factually cognizable and legally coherent challenge to summary judgment. We have carefully reviewed Cubar's arguments in light of the record and applicable law and conclude he has failed on both counts.

■ Cubar contends the Bank lacks standing to institute foreclosure proceedings. To have standing to sue in Kentucky, a party must have an immediate and "judicially recognizable interest in the subject matter of the suit." *Commonwealth v. Yamaha Motor Mfg. Corp.,* 237 S.W.3d 203, 205 (Ky.2007). Undoubtedly, as a mortgage lender—and party to the contract—the Bank has standing to bring foreclosure proceedings in the event of a breach. *Tax Ease Lien Investments 1, LLC v. Commonwealth Bank & Trust,* 384 S.W.3d 141, 143 (Ky.2012). And even if Cubar's argument were correct, he waived it by failing to include any mention of standing in his answer. In Kentucky, a party must timely plead lack of standing as a defense, lest it be waived. *Harrison v. Leach,* 323 S.W.3d 702, 708 (Ky.2010). Here, the record reveals that Cubar first mentions standing when opposing the Bank's motion for summary judgment. By then it was too late; Cubar should have raised this issue in a pleading, not during the summary judgment phase. Accordingly, we reject Cubar's contention that the Bank lacked standing to bring this suit.

■ Cubar next argues that the circuit court lacked subject matter jurisdiction over this case. Kentucky law defines subject-matter jurisdiction as the court's "power to hear and rule on a particular type of controversy." *Nordike v. Nordike,* 231 S.W.3d 733, 737 (Ky.2007). The Nelson Circuit Court certainly had subject matter jurisdiction over this lawsuit. Circuit courts exist by virtue of Section 109 of the Constitution of Kentucky and are imbued with general jurisdiction. *Gordon v. NKC Hospitals, Inc.,* 887 S.W.2d 360, 362 (Ky.1994). Further, KRS 23A.010 vests

Kentucky circuit courts with jurisdiction over "all justiciable causes not exclusively vested in some other court." Actions for foreclosure are no exception, and Kentucky circuit courts deal with them every day. *See Cornett v. Combs*, 265 S.W.2d 482, 483 (Ky.1954)(noting that it was "beyond any doubt" that the circuit court had subject matter jurisdiction over foreclosure proceedings.)

Finally, Cubar alleges several nonsensical arguments, ranging from bald accusations that the Bank's attorneys committed misconduct to assertions that the Bank impliedly agreed to alter the terms of Cubar's mortgage by failing to respond to his correspondence. Cubar's arguments indicate that he fundamentally misunderstands our legal system, making it difficult to comprehend his argument, let alone formulate cogent responses to any of his deeply flawed legal premises. For instance, Cubar seems to contend that the Bank counterfeited the documentation of his loan simply because it provided him photocopies upon his request; obviously this is incorrect. To support that contention, Cubar references two large appendices that he has compiled, replete with (irrelevant) statutes, case law, and his own independent "research" which, in his mind, will expose systemic fraud in the banking industry. Based on our review of the record, including a thorough review of Cubar's "research," and the applicable law, we cannot find a single shred of merit to any of these claims.

Cubar's appeal is so mired in "sovereign citizen" rhetoric and philosophy[1] that meaningful review is impossible. It is so lacking in merit and so suggestive of hav-

1. Adherents of this philosophy "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt v. United States*, 100 Fed.Cl. 279, 282 (2011) (citations omitted). "[C]ourts have encountered these claims before, namely, in the antics and writing of extremists who wish to dissociate themselves from the social compact undergirding this nation's democratic institutions, including the independent judicial branch of government." *United States v. Mitchell*, 405 F.Supp.2d 602, 605 (D.Md. 2005). *Mitchell* summarizes these types of anti-government theories:

> Though the precise contours of their philosophy differ among the various groups, almost all antigovernment movements adhere to a theory of a "sovereign" citizen. Essentially, they believe that our nation is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are "corporate" or "14th Amendment" citizens by virtue of the ratification of the 14th Amendment. The arguments put forth by these groups are generally incoherent, legally, and vary greatly among different groups and different speakers within those groups. They all rely on snippets of 19th Century court opinions taken out of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent. One of the more cogent[—]in the sense that it is readily followed—arguments is that there were no United States citizens prior to the ratification of the 14th Amendment. All Americans were merely citizens of their own state and owed no allegiance to the federal government. As a result of that amendment, however, Congress created a new type of citizen—one who now enjoyed privileges conferred by the federal government and in turn answered to that government.

> One of the ramifications of this belief is the dependent belief that, unless one specifically renounces his federal citizenship, he is not the type of citizen originally contemplated by the Constitution. And, in their view, the Constitution requires all federal office holders to be the original or sovereign type of citizen, a state citizen rather than a United States citizen. As a result, all federal officers are holding office illegally and their laws and rules are thus constitutionally suspect.

*Id.* at 605 (quoting The Anti–Government Movement Guidebook, National Center for State Courts, at 51 (1999) ("NCSC Guidebook")).

ing been brought in bad faith that it practically invites sanctioning as a frivolous appeal. CR[2] 73.02(4). We will decline that invitation.

### Conclusion

The Nelson County Circuit Court's May 5, 2014 Order is affirmed.

ALL CONCUR.

---

2. Kentucky Rules of Civil Procedure.