RENDERED:  MAY 16, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0860-MR

STACEY WHITLEY AND
MARCUS WHITLEY                                                          APPELLANTS


v.                    APPEAL FROM GRAYSON CIRCUIT COURT
                      HONORABLE KENNETH H. GOFF, II, JUDGE
                      ACTION NOS. 22-CI-00272 AND 23-CI-00068


MICHAEL SHELTON; DONNA
SHELTON; ANGELA SOWELL; AND
IAN HINSON                                                                APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  This is an appeal from an action for grandparent visitation.

Unlike the majority of such cases, this is not an action by a grandparent against a

parent with superior rights.  This case involves five grandparents, all of whom seek

to be involved in the life of a young girl whose mother was killed in a tragic car

accident. For the reasons outlined below, we affirm the findings of fact, conclusions of law, and order of the Grayson Circuit Court which extended visitation rights to all grandparents.

## BACKGROUND

Ian Hinson ("Ian") and Destiny Shelton ("Destiny") are the parents of A.C.H. Destiny died in a car accident in November 2022, in which Ian was driving the vehicle. Within days of the accident, Stacey Whitley and Marcus Whitley ("the Whitleys"), mother and stepfather of Ian, filed a petition seeking sole custody of A.C.H. That petition was accompanied by Ian's signed waiver of his superior parental rights, relinquishing those rights to the Whitleys. An agreed order was also submitted and signed by the Whitleys and Ian, and then by the court, with no notice to any of the other grandparents.

Shortly thereafter, Angela Sowell ("Angela"), biological mother of Destiny, intervened in that action. Her intervention was accompanied by another agreed order providing her with visitation with A.C.H. However, part of that agreed order, which was prepared by the Whitleys' attorney, prohibited Angela from allowing A.C.H. to have any contact or communication with Destiny's father, Michael Shelton (the maternal grandfather), or his wife, Donna Shelton (collectively, "the Sheltons"). The order specifically provided that any violation

-2-

would result in denial of Angela's visitation by the Whitleys.  The circuit court signed that agreed order in December 2022.

Within a few months, the Sheltons became aware of these developments when the Whitleys refused to allow them to speak with or see their granddaughter.  They then filed a petition for grandparent visitation pursuant to Kentucky Revised Statute ("KRS") 405.021.  The Whitleys answered the petition, denying that visitation between the Sheltons and A.C.H. was in the child's best interest.  By agreement, those two actions were consolidated and ultimately heard before a Domestic Relations Commissioner ("DRC") in January 2024.  All parties testified and presented witnesses.  The testimony confirmed that the Whitleys had denied any contact between the Sheltons and A.C.H. since Destiny's death in 2022.  The evidence also confirmed that, before Destiny's death, A.C.H. had a loving relationship and bond with all five grandparents.  On February 20, 2024, after considering all of the evidence, the DRC entered findings, conclusions, and recommendations awarding visitation to the Sheltons.

The Whitleys filed exceptions to the DRC's recommendations, primarily arguing that the DRC had not sufficiently considered all of the factors contained in *Walker v. Blair*, 382 S.W.3d 862, 871 (Ky. 2012), a leading case on

grandparent visitation.[1]  Within those exceptions, there was a single line stating that Donna Shelton, as step-grandmother of A.C.H., was not entitled to grandparent visitation.  The circuit court denied the exceptions and entered the findings, conclusions, and order on March 15, 2024.

The Whitleys then filed a motion pursuant to Kentucky Rules of Civil Procedure ("CR") 52 and 59, arguing again that the circuit court had misapplied *Walker*.  Further, they now argued that Donna Shelton's right to grandparent visitation must be dismissed for lack of standing.  Those motions were heard and overruled by the court, resulting in the findings and judgment on July 1, 2024.  As it pertains to this appeal, the court stated the following:

> The Whitleys and [Ian] argue that "Petitioner Donna Shelton does not have Standing."  Standing was never pled as a defense by the [Whitleys] in a response to the Petition for Grandparent Visitation.  Additionally, the question as to whether Donna Shelton had standing to join her husband as a grandparent was never mentioned during the hearing on January 23, 2024.  The Sheltons were never provided with an opportunity to address this issue prior to objections filed by the [Whitleys].  Specifically, the Whitley[s'] only remark that relates to standing occurred in their objection to the DRC report. . . . Donna is a step-grandparent and is not entitled to seek grandparent visitation."  (page 2 of objections filed by [the] Whitleys[.]) . . .

---

[1] The circuit court did address the *Walker* factors required for consideration in a grandparent visitation case.  The Whitleys are no longer asserting on appeal that there was insufficient evidence to support the court's findings, so we need not address those findings further.

Standing, unlike subject matter jurisdiction, can be waived. *Harrison v. Leach*, 323 S.W.3d 702 ([Ky.] 2010)[.] KRS 405.021 does not provide a definition of a grandparent. The Sheltons, together, were involved in Destiny's life up to her death and with the infant child's life from the day she was born. The relationship between Michael and Donna to [A.C.H.] is not separable.

Only the Whitleys have filed an appeal, arguing: 1) that the circuit court's award of visitation to a step-grandparent was in error; and, 2) that the court further erred in determining that lack of standing was waived by the Whitleys' failure to raise that defense prior to the court's rulings.

## ANALYSIS

As the Whitleys are no longer questioning the sufficiency of the evidence, we are presented with only questions of law which we review *de novo*. *See Palmer v. Burnett*, 384 S.W.3d 204, 205 (Ky. App. 2012) (citation omitted). The applicable statute, KRS 405.021, was enacted in the 1980s, and provides, in relevant part, that:

> (1) (a) The Circuit Court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Once a grandparent has been granted visitation rights under this subsection, those rights shall not be adversely affected by the termination of parental rights belonging to the grandparent's son or daughter, who is the father or mother of the child visited by the grandparent, unless the Circuit Court determines that it is in the best interest of the child to do so.

In 1987, this Court was first called upon to address extension of that right beyond the language of the statute. In *Cole v. Thomas*, 735 S.W.2d 333 (Ky. App. 1987), we held that a great-grandparent was not included in the purview of the statute, stating:

> It is often stated in such opinions and it is worth including herein, that it is *hoped* that the custodian will see the wisdom in permitting the child to visit with those persons who have developed a close relationship with the child such as is alleged here.
>
> . . . However, we cannot justify creating a cause of action or legal right which the legislature has not found it necessary to enact.
>
> Indeed, we have determined that our legislature has attempted to sharply limit those with the right to file such a petition to four people, the child's four grandparents. . . .
>
> To allow great-grandparents to be included within KRS 405.021(1) would open the door to aunts and uncles, cousins and great-great-grandparents. While we would not be adverse to allowing those persons "standing in loco parentis" or "any person having an interest in the welfare of the child" to file petitions such as this, we do not believe this was the intention of the legislature.

*Id*. at 334-35.

More recently, this Court reiterated that the existence and extent of grandparents' rights are exclusively the prerogative of the legislature, and we are limited to interpreting and applying the statutory mandate. In *Palmer v. Burnett*, *supra*, we held that a grandmother did not have standing to pursue grandparent

-6-

visitation with her biological granddaughter because she had previously and voluntarily terminated her parental rights with respect to her daughter (the granddaughter's mother) prior to the granddaughter's birth. 384 S.W.3d at 206-07. When the grandmother terminated her parental rights, that constituted a permanent severance of the parent-child relationship, and that termination had broad effect. *Id.* at 206. As a result, parental (and grandparent) rights were now conferred on the adoptive parents. *Id*.

Here, the Sheltons argue that as family relationships have become more complex, the legislature has broadened the opportunities for concerned persons to adopt, seek custody, or seek visitation with children, through statutes allowing fictive kin and *de facto* custodians to pursue such rights. *See generally* KRS 199.011(9); KRS 403.320; and KRS 403.270. While we agree and applaud that progression, this case was specifically brought under KRS 405.021, the grandparent visitation statute. The statute does not define the term grandparent, but we cannot add words to legislation to extend those rights to others, as we acknowledged in 1987 in *Cole*, *supra*.

We do not disagree with the DRC that this child deserves to have relationships and love and support from all who were part of her life prior to her mother's death. That includes the step-grandmother, as well as the step-

grandfather, and the other three biological grandparents.[2]  However, KRS 405.021 does not currently afford those rights to step-grandparents.

Despite that conclusion, we affirm the judgment below.  The circuit court properly concluded that Donna Shelton's "standing" had been waived by the Whitleys.  Through counsel, the Whitleys filed objections to the Sheltons' petition for grandparent visitation.  The Sheltons' petition clearly stated that Michael Shelton was the maternal grandfather and Donna the maternal step-grandmother.  Lack of standing was not raised in the Whitleys' response.  The Whitleys averred only that visitation was not in the best interest of A.C.H. and did not file a motion to dismiss based upon lack of standing.  They did not raise lack of standing at any time before or during the hearing, which was conducted in January 2024, nine months after the filing of the grandparent visitation petition.  In exceptions to the DRC's report, there was a single sentence simply stating that Donna was a step-grandparent, a fact that was not in dispute nor misrepresented by the Sheltons.  All parties testified to their relationship, both biologically and emotionally, with A.C.H.  It was only after the circuit court adopted the recommendations and order affording visitation rights to the Sheltons that the Whitleys first raised lack of standing in a post-judgment motion.

---

[2] The filing of the custody petition by the step-grandfather and paternal grandmother, the Whitleys, was not an action under KRS 405.021, but an action for custody, accompanied by the living parent's consent, pursuant to KRS 403.270.

Our Supreme Court has made it clear that a lack of standing is waived if not timely pled. In *Harrison*, *supra*, our Supreme Court held that a father had waived any issues relative to a grandparent's standing in a dependency action because he failed to raise the issue in the trial court. 323 S.W.3d at 705. Aligning with other jurisdictions across the country which so hold, the High Court stated that subject matter jurisdiction cannot be waived, but "standing is a defense that may be waived." *Id.* "[A]n opposing party may waive any question regarding another party's inability to bring a particular action under particular facts." *Id.* at 707.

This Court reiterated that waiver principle in *Cubar v. Town & Country Bank and Trust Company*, 473 S.W.3d 91 (Ky. App. 2015). There, the bank had secured a mortgage on the property owner's ("Cubar") property and began foreclosure proceedings when he failed to pay the loan. *Id.* at 92. The trial court granted summary judgment to the bank and ordered the property sold. *Id.* Cubar appealed and argued the bank lacked standing to file the foreclosure action. *Id.* This Court held that "even if Cubar's argument [was] correct, he [had] waived it by failing to include any mention of standing in his answer." *Id.* Cubar had first raised lack of standing in the memorandum in opposition to summary judgment. *Id.* "By then[,] it was too late[.]" *Id.*

Finally, and more recently, the Supreme Court has again confirmed that lack of standing is a defense that must be raised or will be considered waived. In *Corner v. Popplewell*, 701 S.W.3d 519 (Ky. 2024), the Court reaffirmed the holding in *Harrison*, *supra*, and discussed the reasoning behind requiring such an affirmative defense to be raised early in the proceedings. *Id.* at 522. A defense such as standing gives the defendant the means to terminate litigation early, upon matters easily proven. *Id.* Adoption of the "use it or lose it" reasoning will lead to a prompt disposition of cases so that "the parties with proper standing can be determined . . . without the appearance of gamesmanship which so often tarnishes the reputation of our profession." *Id.* When a defendant stands mute at the outset of litigation, and then later raises a lack of standing, it creates an inefficient use of the time and resources of the parties and the trial courts. *Id.*

Here, as all concerned grandparents testified before the DRC, the evidence might well have been much the same. Still, for the Whitleys to now raise this defense gives the appearance of gamesmanship. Having reviewed the entire record and the applicable law, we can easily apply the waiver doctrine, as the circuit court did, to hold that the Whitleys raised this argument too late.

## CONCLUSION

For all of the foregoing reasons, we AFFIRM the findings of fact, conclusions of law, and order of the Grayson Circuit Court.

-10-

ALL CONCUR.


BRIEFS FOR APPELLANTS:

William D. Tingley
Covington, Kentucky

BRIEF FOR APPELLEES MICHAEL
SHELTON AND DONNA
SHELTON:

Lyn Taylor Long
Elizabethtown, Kentucky